**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| HELEN KRUKAS, ANDREA KUSHIM, and GEORGIA LUKE on behalf of themselves and all others similarly situated, | |
| Plaintiffs, | Civil Action No. 18-cv-1124 (BAH) |
| v. | Chief Judge Beryl A. Howell |
| AARP, INC., AARP SERVICES, INC., and AARP INSURANCE PLAN, | **ORAL ARGUMENT REQUESTED** |
| Defendants. | |

**DEFENDANTS' MOTION TO DISMISS COUNT II OF**
**PLAINTIFF'S FIRST AMENDED COMPLAINT**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants AARP, Inc., AARP

Services Inc., and AARP Insurance Plan (the "Defendants"), by their undersigned counsel,

hereby move to dismiss Count II (Breach of Fiduciary Duty) of the First Amended Complaint for

failure to state a claim upon which relief may be granted.

The grounds for this Motion are fully set forth in the accompanying Memorandum of

Points and Authorities and attached exhibits.  A proposed order is also submitted herewith.

Defendants respectfully request that the Court hear oral argument on this Motion.


[[SIGNATURES APPEAR ON FOLLOWING PAGE]]

Dated: January 13, 2020

Respectfully submitted,

 /s/ *Alec W. Farr*
Alec W. Farr (D.C. Bar No. 440046)
Heather S. Goldman (D.C. Bar No. 1001566)
Adam L. Shaw (D.C. Bar No. 1035046)
BRYAN CAVE LEIGHTON PAISNER LLP
1155 F Street, NW
Washington, DC 20004
Phone: (202) 508-6000
Fax:    (202) 508-6200
awfarr@bclplaw.com
heather.goldman@bclplaw.com
adam.shaw@bclplaw.com

Jeffrey S. Russell (admitted *pro hac vice*)
BRYAN CAVE LEIGHTON PAISNER LLP
211 North Broadway, Suite 3600
St. Louis, M) 63102
Phone: (314) 259-2000
Fax:    (314) 259-2020
jsrussell@bclplaw.com

*Attorneys for Defendants AARP, Inc., AARP*
*Services, Inc., and AARP Insurance Plan*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| HELEN KRUKAS, ANDREA KUSHIM, and GEORGIA LUKE on behalf of themselves and all others similarly situated, | |
| Plaintiffs, | Civil Action No. 18-cv-1124 (BAH) |
| v. | Chief Judge Beryl A. Howell |
| AARP, INC., AARP SERVICES, INC., and AARP INSURANCE PLAN, | **ORAL ARGUMENT REQUESTED** |
| Defendants. | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS COUNT II OF PLAINTIFF'S FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1

II.     FACTUAL AND REGULATORY BACKGROUND ......................................... 2

    A.  The United Medigap Program ................................................................... 2

    B.  Plaintiffs' First Amended Complaint ........................................................ 4

III.    LEGAL STANDARD ......................................................................................... 5

IV.     ARGUMENT ....................................................................................................... 6

    A.  Count II Should Be Dismissed Because Plaintiffs Fail to Allege that
    Defendants Owe Them a Fiduciary Duty with Respect to the United Medigap
    Program .................................................................................................... 7

        1.  Defendants Do Not Owe Plaintiffs Any Fiduciary Duties Arising from the
        AARP Trust. ..................................................................................... 7

        2.  Plaintiffs' Membership in AARP Does Not Give Rise to a Fiduciary
        Relationship. ................................................................................. 11

    B.  Count II Should Also Be Dismissed Because Plaintiffs Fail to Allege Conduct
    Amounting to a Breach of Any Fiduciary Duty ...................................... 13

        1.  Allegations Concerning Conduct that Occurred Before Plaintiffs
        Purchased United Medigap Coverage Cannot Establish a Breach of Any
        Fiduciary Duty. ............................................................................. 13

        2.  D.C. Law Does Not Require Fiduciaries to Make the Detailed Disclosure
        Plaintiffs Demand. ........................................................................ 14

        3.  Plaintiffs Fail to Allege Sufficient Facts to Establish a Breach of the Duty
        of Loyalty. ..................................................................................... 17

        4.  The Declaration of Trust Forecloses Plaintiffs' Theory of a Breach as a
        Matter of Law. .............................................................................. 18

V.      CONCLUSION .................................................................................................. 19

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ........................................................................................................5, 12

*Attias v. CareFirst, Inc.,*
    365 F. Supp. 3d 1 (D.D.C. 2019), *appeal docketed*, No. 19-7020 (D.C. Cir.
    Mar. 14, 2019) ...............................................................................................................10

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ..........................................................................................................5

*Christoph v. AARP, Inc.,*
    No. 18-3453, 2019 WL 4645172 (E.D. Pa. Sept. 23, 2019) ......................................1

*Coburn v. Evercore Trust Co., N.A.,*
    844 F.3d 965 (D.C. Cir. 2016) ........................................................................................5

*Command Consulting Grp., LLC v. Neuraliq, Inc.,*
    623 F. Supp. 2d 49 (D.D.C. 2009) ...............................................................................18

*Dane v. UnitedHealthCare Ins. Co.,*
    401 F. Supp. 3d 231 (D. Conn. 2019), *appeal docketed*, No. 19-2330 (2d Cir.
    July 25, 2019) ...................................................................................................................1

*Friedman v. AARP, Inc.,*
    No. 14-00034 DDP (PLA), 2019 WL 5683465 (C.D. Cal. Nov. 1, 2019),
    *appeal docketed*, No. 19-56386 (9th Cir. Nov. 27, 2019) ........................................1

*Gowens v. DynCorp,*
    132 F. Supp. 2d 38 (D.D.C. 2001) .................................................................................6

*Gustave-Schmidt v. Chao,*
    226 F. Supp. 2d 191 (D.D.C. 2002) ...............................................................................6

*Kaempe v. Myers,*
    367 F.3d 958 (D.C. Cir. 2004) ...................................................................................6, 13

*Kowal v. MCI Commc'ns Corp.,*
    16 F.3d 1271 (D.C. Cir. 1994) .................................................................................5, 10

*Levay v. AARP, Inc.,*
    No. 17-09041 DDP, 2019 WL 2108124 (C.D. Cal. May 14, 2019) ...................1, 10

*Lipton v. MCI Worldcom, Inc.,*
    135 F. Supp. 2d 182 (D.D.C. 2001) ................................................................6

*Magee v. AICPA,*
    245 F. Supp. 3d 106 (D.D.C. 2017) ..............................................................11

*Marcus v. District of Columbia,*
    646 F. Supp. 2d 58 (D.D.C. 2009) ..................................................................5

*Marshall v. Honeywell Tech. Sols., Inc.,*
    536 F. Supp. 2d 59 (D.D.C. 2008) ..................................................................6

*Murray v. Wells Fargo Home Mortg.,*
    953 A.2d 308 (D.C. App. 2008)......................................................................18

*Papasan v. Allain,*
    478 U.S. 265 (1986)..........................................................................................5

*Sandza v. Barclays Bank PLC,*
    151 F. Supp. 3d 94 (D.D.C. 2015)..............................................................7, 11

*Slate v. Public Def. Serv. for Dist. of Columbia,*
    31 F. Supp. 3d 277 (D.D.C. 2014) ..................................................................2

*Steele v. Isikoff,*
    130 F. Supp. 2d 23 (D.D.C. 2000) .....................................................10, 11, 12

*Trudeau v. Federal Trade Comm'n,*
    456 F.3d 178 (D.C. Cir. 2006) ........................................................................5

*Williams v. Purdue Pharma Co.,*
    297 F. Supp. 2d 171 (D.D.C. 2003) ................................................................5

*Ying Qing Lu v. Lezell,*
    919 F. Supp. 2d 1 (D.D.C. 2013) ..........................................................6, 7, 12

**Statutes**

42 U.S.C. § 1395ss(g)(1) ........................................................................................2

D.C. Code § 19-1301.03(2)......................................................................................8

D.C. Code § 19-1301.03(14)..................................................................................16

D.C. Code § 19-1301.05 ........................................................................................12

D.C. Code § 19-1301.05(a)....................................................................................16

D.C. Code § 19-1306.02 ..................................................................................10, 17

D.C. Code § 19-1306.03(a)............................................................................................8, 17

D.C. Code § 19-1308.01 ............................................................................................14, 18

D.C. Code § 19-1308.02 ..................................................................................................9

D.C. Code § 19-1308.04 ................................................................................................17

D.C. Code § 19-1308.13(a) ............................................................................................16

D.C. Code § 19-1308.15(a)(1) ........................................................................................9

D.C. Code § 19-1308.15(b)............................................................................................10

D.C. Code § 19-1310.01 ................................................................................................10

D.C. Code § 19-1310.06 ................................................................................................18

Fla. Admin. Code § 69O-156.011(3) .............................................................................15

Fla. Admin. Code § 69O-156.012(1)-(2) ................................................................11, 15

Fla. Stat. § 627.674 ........................................................................................................15

Mich. Comp. Laws § 500.3847.......................................................................................15

Mich. Comp. Laws § 500.3849................................................................................11, 15

**Rules**

Fed. R. Civ. P. 12(d) ........................................................................................................5

**Other Authorities**

3 J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* § 18.48
   (4th ed. 2017)..............................................................................................................4

Restatement (Second) of Trusts § 126 ...........................................................................9

Restatement (Third) of Trusts § 48 ................................................................................9

## I.      **INTRODUCTION**

Plaintiffs' First Amended Class-Action Complaint ("FAC") adds an ill-founded Count II, a breach of fiduciary duty claim with no basis in any plausibly-pleaded facts or District of Columbia law. Even assuming the truth of Plaintiffs' mistaken assumptions about the meaning of various documents quoted in the FAC, Plaintiffs cannot escape the legal truth that Plaintiffs and Defendants do not have a fiduciary relationship. Plaintiffs also have not alleged and cannot plausibly allege any set of facts to establish a breach of such a relationship because their new theory is foreclosed by both D.C. trust law and the trust instrument governing Defendant AARP Insurance Plan (the "AARP Trust"). Accordingly, this Court should dismiss Count II of the FAC.[1]

---

[1]      Aside from adding two new plaintiffs, the substantive allegations in the FAC remain materially the same as those in the original complaint filed by Plaintiff Helen Krukas. Defendants respectfully advise the Court that since the March 17, 2019 ruling on Defendants' motion to dismiss the original complaint, four additional courts have dismissed allegations substantially similar to those raised by Plaintiffs here. *See Levay v. AARP, Inc.*, No. 17-09041 DDP (PLAx), 2019 WL 2108124, at *5 (C.D. Cal. May 14, 2019) (granting motion to dismiss and rejecting as a matter of law plaintiff's theory that AARP stands in a "fiduciary-like relationship" to members); *Dane v. UnitedHealthCare Ins. Co.*, 401 F. Supp. 3d 231, 238-39 (D. Conn. 2019) (granting motion to dismiss all claims, including DC CPPA claim, on various grounds, and holding that plaintiffs suffered no injury because they paid only the regulator-approved premium rate), *appeal docketed*, No. 19-2330 (2d Cir. July 25, 2019); *Christoph v. AARP, Inc.*, No. 18-3453, 2019 WL 4645172, at *5 (E.D. Pa. Sept. 23, 2019) (granting motion to dismiss "illegal commission" claim as plaintiffs paid only regulator-approved premium rates); *Friedman v. AARP, Inc.*, No. 14-00034 DDP (PLA), 2019 WL 5683465, at *6 (C.D. Cal. Nov. 1, 2019) (on remand, granting motion to dismiss and holding that plaintiffs' theory that they paid more than the "'true premium' . . . necessary or required to bind coverage" was implausible), *appeal docketed*, No. 19-56386 (9th Cir. Nov. 27, 2019). Now that the *Friedman* action in California has been dismissed for failure to state a claim as a matter of law, Plaintiffs here have added California residents to their proposed class and seek to pick up where the *Friedman* plaintiffs left off. *See* FAC ¶ 1.

## II.   FACTUAL AND REGULATORY BACKGROUND

### A.   The United Medigap Program

AARP, Inc. is a nonprofit, social welfare, membership organization that advocates for the interests of the 50+ population at large. FAC ¶¶ 25, 30. United is a health insurance company; one of its offerings is a Medigap program that United insures and offers to individual AARP members across the country, subject to state-specific regulation and approval (the "United Medigap" program). *Id.* ¶¶ 34-36. Plaintiff Helen Krukas is currently a Florida resident who purchased United Medigap coverage in 2012 and renewed her coverage every month through November 2016. *Id.* ¶ 22. Plaintiff Andrea Kushim is a Michigan resident who purchased United Medigap coverage in December 2016 and has renewed her coverage through the date of the FAC. *Id.* ¶ 23. Plaintiff Georgia Luke is also a Michigan resident; she purchased her coverage in July 2017 and has renewed it through the date of the FAC. *Id.* ¶ 24.

Medigap insurance provides coverage for certain healthcare costs not covered by Medicare. *See* 42 U.S.C. § 1395ss(g)(1). In 1997, United and AARP, Inc. entered into the AARP Health Insurance Agreement (the "Agreement"), under which United licenses AARP, Inc.'s intellectual property, including the AARP name, trademarked logo, and membership list, for use with United's Medigap offering. FAC ¶ 42; *see also* Agreement, attached hereto as Exhibit 1.[2] The Agreement recognizes that AARP's reputation and marks are of considerable value, and in exchange for the use of this intellectual property in connection with the United Medigap program, United pays a royalty to AARP, Inc. *See* FAC ¶ 4; Agreement §§ 4.2.4, 6.1, 6.7 at 52,

---

[2]   Because the FAC explicitly references and relies on the AARP Health Insurance Agreement and publicly available United Medigap advertising materials, s*ee, e.g.,* Compl. ¶¶ 43-47, 56, the Court may consider these materials as well. Plaintiffs cannot avoid dismissal by failing to attach the documents to the Complaint. *Slate v. Public Def. Serv. for Dist. of Columbia*, 31 F. Supp. 3d 277, 287-88 (D.D.C. 2014).

58, 66-67. The original Agreement between United and AARP has been extended and amended over the years. FAC ¶¶ 45-49.

United insures the coverage through a group policy (the "Policy") issued to the AARP Trust, which is a grantor trust organized under D.C. law. In addition, the Agreement between United and AARP sets forth the parties' respective roles and responsibilities with respect to the program. *See* Agreement § 2.86 at 28; FAC ¶ 26. The AARP Trust collects premiums in its capacity as group policyholder and, at United's direction, transmits them to United net of certain expenses, including the royalty, which are owed to AARP, Inc. and certain third party vendors. Compl. ¶ 26; Agreement § 6.7. United markets and sells the Medigap coverage and is responsible for obtaining all regulatory approvals for policy certificates, advertising materials, and premium rates charged to insureds. Agreement §§ 3.2.2, 3.3.8 at 38-39, 47.

United markets the Medigap program, including through the advertising materials referenced in the FAC. *See* Compl. ¶¶ 56; *see also* https://www.aarpmedicareplans.com/health-plans/medicare-supplement-plans, a copy of which is attached hereto as Ex. 2 (last visited and website saved as an exhibit on January 13, 2020); https://www.aarpmedicareplans.com/disclaimer.html, a copy of which is attached hereto as Ex. 3 (last visited and webpage saved as an exhibit on January 13, 2020). United's advertisements disclose the payment and its purpose:

> AARP endorses the AARP Medicare Supplement Insurance Plans, insured by UnitedHealthcare Insurance Company. UnitedHealthcare Insurance Company pays royalty fees to AARP for the use of its intellectual property. These fees are used for the general purposes of AARP. AARP and its affiliates are not insurers. AARP does not employ or endorse agents, brokers or producers.

Ex. 3 at 2; FAC ¶ 5. United markets and sells the Medigap coverage and is responsible for obtaining all regulatory approvals for policy certificates, advertising materials, and premium

rates charged to insureds. Agreement §§ 3.2.2, 3.3.8 at 38-39, 47. All states separately regulate the review of Medigap advertising used within the state, but each state generally requires advance review (or approval) of all advertising by the insurance regulator before use. As demonstrated above, United openly discloses its payment of the royalty to AARP to its state insurance regulators and to the public at large.

To protect the AARP marks and intellectual property, AARP, Inc. separately engages its taxable subsidiary, Defendant AARP Services Inc. ("ASI"), to provide relationship management and quality control services in connection with the licensing of AARP's intellectual property. Agreement at 111-12; FAC ¶ 26.[3]

### B.   Plaintiffs' First Amended Complaint

The FAC alleges that AARP owes a fiduciary duty to AARP members who purchase United Medigap coverage. FAC ¶ 15. In particular, Plaintiffs allege that AARP documents identify United Medigap member-insureds as beneficiaries of the AARP Trust, *id.* 85, and that AARP's control over the AARP Trust means that it owes member-insureds: a duty "to administer the Trust in the best interests of the beneficiaries of the Trust," "a duty of loyalty, a duty to act in good faith . . . and a duty of ordinary care, skill and prudence when administering the trust." FAC ¶ 85 (quoting purportedly "internal" AARP documents). Plaintiffs allege that AARP "acknowledged" in "internal documents" that it acts as a fiduciary with respect to its members. *Id.* ¶¶ 82-84. Plaintiffs allege that by failing to provide them with more information about the royalty that United pays to AARP, AARP breached its purported fiduciary duties.

---

[3]      The policing of intellectual property is a routine part of licensing agreements and is necessary to protect a trademark—if AARP, Inc. did not provide for the monitoring of its marks it would put its interest in its intellectual property at risk. *See, e.g.*, 3 J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* § 18.48 (4th ed. 2017) ("Uncontrolled or 'naked' licensing may result in the trademark ceasing to function as a symbol of quality and controlled source. This effect has often been characterized as an 'abandonment' of the trademark.").

Plaintiffs claim that they were harmed "as a result of AARP's self-dealing and lack of candor by paying 4.95% on top of the premiums AARP remitted to UnitedHealth to pay for Class Members' AARP Medigap Policies." FAC ¶¶ 88, 120. Further, plaintiffs contend that this purported breach injured them because had they known the "true" nature of the royalty payment, they would have sought out other Medigap coverage offering the same services for a lower rate. FAC ¶ 10.

## III.   LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. *Williams v. Purdue Pharma Co.*, 297 F. Supp. 2d 171, 173 (D.D.C. 2003). A complaint cannot survive a motion to dismiss without containing sufficient factual matter that, accepted as true, will "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Marcus v. District of Columbia*, 646 F. Supp. 2d 58, 60 (D.D.C. 2009) ("To survive a motion to dismiss, a plaintiff must allege facts 'above the speculative level,' such that the facts, if taken as true, are 'suggestive of illegal conduct.'") (quoting *Twombly*, 550 U.S. at 555, 563 n.8) (citation omitted); *Coburn v. Evercore Trust Co., N.A.*, 844 F.3d 965, 968 (D.C. Cir. 2016).

Threadbare recitals of the elements of a cause of action, supported by conclusory legal allegations, do not suffice to state a valid claim and should be dismissed. *Iqbal,* 556 U.S. at 678. The Court need not accept as true "a legal conclusion couched as a factual allegation," or an inference unsupported by the facts set forth in the FAC. *Trudeau v. Federal Trade Comm'n*, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (internal quotation marks omitted)). Similarly, "pejorative characterizations" of fact are immaterial. *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1277 (D.C. Cir. 1994).

A court considering a Rule 12(b)(6) motion can properly rely on the facts alleged in the complaint and documents referenced in the complaint, without treating the motion "as one for summary judgment under Rule 56." *See* Fed. R. Civ. P. 12(d); *Gowens v. DynCorp*, 132 F. Supp. 2d 38, 41 n.2 (D.D.C. 2001) (court considering motion to dismiss under Rule 12(b)(6) can properly rely on a document attached to motion to dismiss that "is referred to in the complaint and forms the basis for plaintiff's claims"); *Marshall v. Honeywell Tech. Sols., Inc.*, 536 F. Supp. 2d 59, 65 (D.D.C. 2008); *accord Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002); *Lipton v. MCI Worldcom, Inc.*, 135 F. Supp. 2d 182, 186 (D.D.C. 2001). The court may disregard factual allegations to the extent that the allegations are contradicted by materials referenced in the complaint or matters subject to judicial notice. *See Kaempe v. Myers*, 367 F.3d 958, 963 (D.C. Cir. 2004) (a court need not "accept as true the complaint's factual allegations insofar as they contradict exhibits to the complaint or matters subject to judicial notice").

## IV.   **ARGUMENT**

To state a claim for breach of fiduciary duty, plaintiffs must plausibly allege "'facts sufficient to show (1) the existence of a fiduciary relationship; (2) a breach of the duties associated with the fiduciary relationship; and (3) injuries that were proximately caused by the breach of the fiduciary duties.'" *Ying Qing Lu v. Lezell*, 919 F. Supp. 2d 1, 6 (D.D.C. 2013) (granting motion to dismiss complaint, including fiduciary-duty claims) (citation omitted).

As shown in detail below, Plaintiffs' new Count II is fatally defective. Plaintiffs' allegations are internally inconsistent, starkly lack plausible supporting facts, and are expressly foreclosed by the trust instrument governing the AARP Trust. Plaintiffs have failed to allege that Defendants owe any fiduciary duties at all, to them or any other AARP members. Nor do they allege any violation of such a hypothetical duty, much less one that caused them harm. For these reasons, together and alone, Count II should be dismissed.

**A.     Count II Should Be Dismissed Because Plaintiffs Fail to Allege that Defendants Owe Them a Fiduciary Duty with Respect to the United Medigap Program.**

Plaintiffs have not plausibly alleged the existence of a relevant fiduciary relationship between themselves and any Defendant. Nor can they. In assessing whether a plaintiff has sufficiently alleged a fiduciary relationship, "District of Columbia courts have traditionally looked for . . . a special confidential relationship that transcends an ordinary business transaction and requires each party to act with the interests of the other in mind." *Ying Qing Lu*, 919 F. Supp. 2d at 6 (internal quotation marks omitted); *see also Sandza v. Barclays Bank PLC*, 151 F. Supp. 3d 94, 107 (D.D.C. 2015) (granting motion to dismiss when plaintiff did not plausibly allege a fiduciary relationship, defined as "'a special relationship of trust or confidence'").

Read generously, the FAC alleges two relationships between AARP and United Medigap member-insureds that Plaintiffs claim give rise to a fiduciary duty: (1) Plaintiffs' alleged status as beneficiaries of the AARP Trust because they purchased insurance coverage under the Policy on which the AARP Trust serves as group policyholder; and (2) Plaintiffs' membership in AARP, with its mission to serve as "an unbiased advocate" for seniors. FAC ¶ 118. Neither of these theories passes muster. Plaintiffs are not the beneficiaries of the AARP Trust, as the trust instrument establishes. Nor does enrollment in a membership organization give rise to a fiduciary relationship. Because the FAC fails to allege plausibly "a special confidential relationship" between Plaintiffs and AARP, the Court should dismiss Plaintiffs' breach of fiduciary duty claim.

**1.     Defendants Do Not Owe Plaintiffs Any Fiduciary Duties Arising from the AARP Trust.**

As an initial matter, because the AARP Trust is revocable, *see* FAC ¶ 84 (AARP "can alter or dissolve [the Trust] at will"), under D.C. law, the Trustees owe a fiduciary duty *only* to

the trust settlor, that is, AARP, Inc. D.C. Code § 19-1306.03(a). The Trustees therefore could not, as a matter of law, owe a fiduciary duty to Plaintiffs, who did not create the Trust.

Moreover, Plaintiffs have not alleged (and cannot allege) that they are otherwise Trust beneficiaries. D.C. law defines "beneficiary" as "a person that: (A) Has a present or future beneficial interest in a trust, vested or contingent; or (B) In a capacity other than that of trustee, holds a power of appointment over trust property." D.C. Code § 19-1301.03(2). The FAC includes no allegations to establish that Plaintiffs fall within either category.

First, Plaintiffs do not and cannot allege that they have a present or future beneficial interest in the AARP Trust. The Declaration of Trust makes clear that the AARP Trust is established for the benefit of the settlor—AARP, Inc.—and exists to support that entity's ability to provide services to members, and otherwise "for the general benefit, good and welfare *of AARP*." Decl. of Trust, attached hereto as Exhibit 4, at 1 (emphasis added); *id.*, art. 2(a) ("The AARP Insurance Plan will be maintained *for the purposes of assisting AARP* to make available for members of AARP a broad spectrum of diversified health-related products and services, . . . to meet members' health-related social welfare needs, *or for the general benefit, good and welfare of AARP*" (emphasis added)); *id.*, art. 7(a) (establishing that trustees "may provide guidance to help insure that the health-related products and services . . . are being provided in a manner that is consistent with the social welfare purposes *of AARP* and is *consistent with AARP's objectives, values and mission*" (emphasis added)). The Declaration of Trust expressly prohibits any kind of distribution of Trust assets to member-insureds. *See* Decl. of Trust art. 9(a). Nowhere does the Declaration of Trust confer a beneficial interest to member-insureds like Plaintiffs.

The possibility that Plaintiffs and other individual member-insureds may receive an incidental benefit from the AARP Trust's operations does not elevate them to the level of beneficiaries, absent the settlor's (here, AARP, Inc.'s) expressed intent to designate them as beneficiaries. This is because a person may benefit from a trust, but without the settlor's intention to give a beneficial interest, that person merely "benefits incidentally" and has no legal entitlement to any benefits. Restatement (Third) of Trusts § 48 ("[A] person who merely benefits incidentally from the performance of the trust is not a beneficiary."); *id.* cmt. a; Restatement (Second) of Trusts § 126. Here, the Declaration of Trust expressly states that member-insureds shall have no right to any benefits from the Trust beyond the incidental benefits "of the insurance proceeds of the policy." See Ex. 4, art. 9(a) ("no Member-Insured shall have the right or option to receive cash or other benefits instead of the insurance proceeds of the policy or certificate held by or payable to him or her, nor to receive any dividends payable in connection with such insurance, nor to receive any cash consideration in lieu of benefits, nor to receive any interest income or other proceeds other than the benefits provided by the master policy.")  Thus, while the Declaration of Trust may acknowledge benefits to member-insureds resulting from the AARP Trust's operation, such benefits are incidental to the primary purpose of the trust of providing administrative assistance to AARP, Inc. in furtherance of its mission.

Second, Plaintiffs cite no capacity under which they could hold a power of appointment over trust property. To the contrary, the Declaration of Trust does not provide for a power of appointment, let alone one to member-insureds. *See generally* Decl. of Trust.[4]

---

[4]     Plaintiffs' trust-based theory also fails because Defendants are not the Trustees of the AARP Trust. District of Columbia trust law imposes fiduciary obligations only on trustees. *See, e.g.*, D.C. Code § 19-1308.02 ("A *trustee* shall administer the trust solely in the interests of the beneficiaries.") (emphasis added). This makes sense, given that only trustees may act on behalf of the trust. *See id.* § 19-1308.15(a)(1) ("A trustee, without authorization by the court, may

The AARP Trust's status as group policyholder on the Policy also does not give rise to a fiduciary relationship between Plaintiffs and the AARP Trust (and even less so AARP). The group policyholder of an insurance policy has a contractual relationship with individuals who are insured pursuant to certificates issued by the insurer under the policy. *See Levay*, 2019 WL 2108124, at *5 (dismissing complaint and rejecting plaintiff's argument that AARP entities owe member-insureds fiduciary responsibilities with respect to Medigap); *cf. Attias v. CareFirst, Inc.*, 365 F. Supp. 3d 1, 23 (D.D.C. 2019) (noting that District of Columbia generally considers the relationship between an insurer and the insured to be a contractual, rather than fiduciary relationship), *appeal docketed*, No. 19-7020 (D.C. Cir. Mar. 14, 2019).

As the group policyholder, the AARP Trust's role with respect to United Medigap coverage is limited to the collection and transmittal of member premiums. Plaintiffs' connection with the AARP Trust consists, at most, of the transmission of their premiums to a depository account maintained by the AARP Trust. Decl. of Trust art. 8(a); FAC ¶ 27.[5] The D.C. common

---

exercise: (1) Powers conferred by the terms of the trust . . . ."). This exercise of power is "subject to the fiduciary duties prescribed by this subchapter" to trustees. *Id.* § 19-1308.15(b). Accordingly, the D.C. Code establishes that "a violation *by a trustee* of a duty *the trustee* owes *to a beneficiary* is a breach of trust" redressable by a list of prescribed judicial remedies. D.C. Code § 19-1310.01 (emphasis added).

      Plaintiffs attempt to sidestep this obvious deficiency by conflating three separate legal entities—AARP, Inc., ASI, and the AARP Trust itself—by referring to them collectively as "AARP." FAC at 1. But the legal conclusion that a nonexistent entity "owes a fiduciary duty to its members (like Plaintiffs and Class Members) who enroll in the AARP Medigap Program," FAC ¶ 15, is no substitute for well-pleaded facts establishing such a duty. *Steele v. Isikoff*, 130 F. Supp. 2d 23, 37 (D.D.C. 2000) (granting motion to dismiss fiduciary-duty claims and refusing to credit plaintiff's allegation of a fiduciary relationship, recognizing it as a "'legal conclusion[] cast in the form of factual allegations'") (quoting *Kowal*, 16 F.3d at 1276). Further, Plaintiffs assert that Defendants owe them a fiduciary duty by virtue of their alleged control over the Trust and its Trustees. FAC ¶¶ 84-85. But that authority is wholly consistent with a settlor's power under D.C. trust law, *see* D.C. Code § 19-1306.02, and does not transform Defendants into Trustees or Plaintiffs into beneficiaries.

[5]      As discussed above, Plaintiffs do not allege that AARP Trust ever failed to transmit their premiums to United. While Plaintiffs object to United's direction that AARP Trust pay certain

law respecting fiduciary relationships requires more: some "'special relationship of trust or confidence'" involving "direct contact" with the alleged fiduciary. *Sandza*, 151 F. Supp. 3d at 107 (rejecting allegation of fiduciary relationship when plaintiff did not allege direct contact between plaintiff and defendant); *Steele v. Isikoff*, 130 F. Supp. 2d 23, 37 (D.D.C. 2000) (dismissing complaint, holding that plaintiff failed to plausibly allege a fiduciary relationship given the "limited interaction" between the parties). Like *Steele* and *Sandza*, Plaintiffs here point to no communications between Defendants and Plaintiffs that could create the kind of "relationship of trust or confidence" necessary for a fiduciary relationship. To the contrary, Plaintiffs rely on generic, mass communications that are not personalized. *See, e.g.*, FAC ¶¶ 55-56. The limited-to-nonexistent interaction between the AARP Trust and Plaintiffs does not implicate any "special relationship" that could give rise to a fiduciary duty on the AARP Trust (much less AARP) to advise Plaintiffs regarding the nature of the premium payments that they make.

### 2.    Plaintiffs' Membership in AARP Does Not Give Rise to a Fiduciary Relationship.

AARP's advocacy on behalf of seniors and its public statements concerning that mission also do not create a fiduciary relationship between AARP and Plaintiffs. The relationship between a member and a membership organization is not one of "trust or confidence" that creates a fiduciary duty. *See Magee v. AICPA*, 245 F. Supp. 3d 106, 116 (D.D.C. 2017) ("The plaintiff cites no case law, nor could the Court find any, that supports the proposition that a professional membership organization owes any fiduciary duty to its members."). AARP's

---

program expenses directly out of premium revenue before transmission to United, United's mechanism for paying program expenses did not and could not affect the premiums Plaintiffs were legally required to pay, which is fixed by law pursuant to Michigan's and Florida's requirements that Medigap insureds pay only and exactly the premium rate that the state insurer has approved for the particular coverage. *See, e.g.*, Fla. Admin. Code § 69O-156.012(1)-(2); Mich. Comp. Laws § 500.3849.

commitment to a specific mission—"enhanc[ing] the quality of life for all as we age" and "champion[ing] positive social change and deliver[ing] value through advocacy, information, and service," *see* FAC ¶86—does not distinguish it from scores of other membership organizations. Notwithstanding Plaintiffs' conclusory assertions to the contrary, AARP's commitment to advocating on behalf of seniors does not "transcend[] an ordinary business" relationship. *See Ying Qing Lu*, 919 F. Supp. 2d at 6 (internal quotation marks omitted).

The "internal documents" cited in the FAC do not change this analysis. These documents recognize that the *Trustees* of the AARP Trust "have fiduciary duties to administer the Trust in the best interest of the beneficiaries of the Trust," that is, AARP. *See, e.g.*, FAC ¶ 85 (quoting a document not attached to the FAC Plaintiffs refer to as "The Changing Senior Landscape (Draft)" at 7) (emphasis added). While a single draft document also suggests that AARP and the Trust have responsibilities to "uphold a fiduciary responsibility" with respect to the "Trust and its members," *see* FAC ¶ 85, this "internal" document at most reflects a passing misunderstanding by the drafter of the Trust's legal structure and cannot create a duty that does not otherwise exist under the law.[6] *See* D.C. Code § 19-1301.05 (the terms of the trust and Title 19, Chapter 13 of the D.C. Code exclusively govern the duties and powers of a trustee and the rights and interests of a beneficiary). Plaintiffs' own legal conclusion that the document constitutes an admission by "AARP" that it owes fiduciary duties to individual member-insureds is entitled to no deference under Rule 12(b)(6), *Iqbal*, 556 U.S. at 678; *Steele*, 130 F. Supp. 2d at 37 (granting motion to dismiss fiduciary-duty claims and refusing to credit plaintiff's allegation

---

[6]     While this Court may fully dispose of Count II without considering this information, it is worth noting that the "AARP Insurance Plan/Treasury & Accounting Services Transition" document, characterized by Plaintiff as an "internal AARP document[]," FAC ¶ 85, is in fact an initial draft created by a third party. Defendants accept, only for the purposes of this Motion, Plaintiffs' incorrect assertion that this is an "internal" AARP document.

of a fiduciary relationship, recognizing it as a "'legal conclusion[] cast in the form of factual allegations'"), particularly since it facially contradicts other referenced documents, the governing Declaration of Trust, and D.C. law. *Kaempe*, 367 F.3d at 963.

All in all, Plaintiffs have failed to make any allegations supporting the existence of a fiduciary relationship between Plaintiffs and Defendants—much less plausible ones.

> **B.      Count II Should Also Be Dismissed Because Plaintiffs Fail to Allege Conduct Amounting to a Breach of Any Fiduciary Duty.**

Even if Plaintiffs could plausibly plead that there is a fiduciary relationship between Defendants and member-insureds (they cannot), Plaintiffs have utterly failed to allege facts showing a breach of such a duty. Plaintiffs contend that Defendants "engag[ed] in self-dealing and fai[ed] to disclose that it retains 4.95% of the money it collects from Plaintiffs and Class Members before remitting premiums to UnitedHealth," FAC ¶ 15, but all that Plaintiffs' allegations establish is that Defendants act consistent with the legal requirements applicable to Medigap coverage and D,C, trust law, and Plaintiffs focus on conduct that is outside the scope even of the fiduciary relationships they assert. These allegations fall short.

> **1.      Allegations Concerning Conduct that Occurred Before Plaintiffs Purchased United Medigap Coverage Cannot Establish a Breach of Any Fiduciary Duty.**

Plaintiffs allege that AARP breached its fiduciary duty of good faith and candor by misleading insureds about the nature and amount of AARP's royalty payments in various communications cited in the FAC. FAC ¶¶ 87, 119.[7] The audience for these communications,

---

[7]      While these allegations must be accepted as true for purposes of a motion to dismiss, Defendants note that the communications referred to in the FAC do not originate from AARP but from United. United is responsible for marketing and selling the United Medigap program and wrote the web-based communications referred to in the FAC. Decl. of Trust art. 7(a)(3)-(4) (prohibiting trustees from reviewing or approving content and timing of communications by service providers to AARP members); Agreement § 3.2.2 (specifying that United is responsible for marketing materials and their regulatory approval).

however, is people **who have not yet purchased** United Medigap coverage and therefore cannot possibly have a fiduciary relationship with AARP based on their status as member-insureds. *See* FAC ¶¶ 56-73. Put differently, even assuming *arguendo* that when Plaintiffs enrolled in United Medigap coverage they stepped into a fiduciary-beneficiary relationship with AARP Trust or AARP, this relationship did not exist at the time Defendants allegedly provided them the communications at issue. Accordingly, any solicitation or marketing communications—which necessarily predate Plaintiffs' purchase of and enrollment in the United Medigap program— could not constitute a breach of a fiduciary duty predicated on Plaintiffs' participation in that program.

### 2. D.C. Law Does Not Require Fiduciaries to Make the Detailed Disclosure Plaintiffs Demand.

Plaintiffs' attempt to plead a breach of the fiduciary duty of good faith and candor is also foreclosed by D.C. trust law, which does not require Defendants to explain the royalty payment from United with the detail that Plaintiffs apparently seek. As the FAC acknowledges, the advertising materials Plaintiffs identify disclosed to member-insureds that "UnitedHealth Insurance Company pays royalty fees to AARP for the use of its intellectual property" and that "[t]hese fees are used for the general purpose of AARP." *See, e.g.*, FAC ¶ 72. Even assuming that AARP (not United) was the speaker in these advertisements, that disclosure more than satisfies a trustee's fiduciary duty of good faith and candor under D.C. trust law—nothing more is required.

Under D.C. law, the duty of good faith requires trustees to "administer the trust in good faith, in accordance with its terms and purposes." D.C. Code § 19-1308.01. None of Plaintiffs' allegations give rise to a plausible inference that the Trust was "administer[ed]" in bad faith or in violation of its terms and purposes. Indeed, AARP's purported failure to disclose the precise

amount of the royalty has nothing to do with the "administ[ration]" of the Trust or its terms and purposes. *See* Decl. of Trust, art. 2(a) (the Trust is administered "for the purposes of assisting AARP to make available for members of AARP a broad spectrum of diversified health-related products and services, . . . to meet members' health-related social welfare needs, or for the general benefit, good and welfare of AARP").

Further, AARP, Inc.'s receipt of royalty compensation out of revenues collected by the AARP Trust in no way violates any duty of good faith or constitutes "self-dealing." Aside from the fact that AARP, Inc. is not a trustee, the royalty compensation is paid to AARP, Inc. at United's direction out of monies that would otherwise be paid to United. *See* Agreement § 6.7; Decl. of Trust art. 8(a).

Indeed, even assuming the Trust is obliged to protect member-insureds' interests in relation to the insurance, Plaintiffs fail to explain how any statement by AARP affects their interest in the insurance coverage that they purchased. Plaintiffs received the insurance coverage they wanted at precisely the terms they were promised at the time of purchase. Under state Medigap law, neither the AARP Trust nor AARP could interfere with the coverage Plaintiffs had elected or its cost—those are questions of insurance that are controlled by Plaintiffs' relationship with United, subject to the regulatory oversight, premium rate approvals, and policy terms prescribed by law. *See* Fla. Stat. § 627.674 (establishing administrative jurisdiction over Medigap policies, including standards for coverage, premium rates, and advertisement); Fla. Admin. Code §§ 69O-156.011(3), 69O-156.012(1)-(2) (establishing loss-ratio standards and procedure for filing policiies and certificates and premium rates); Mich. Comp. Laws § 500.3849 (establishing mandatory rate-filing requirement); *see also id.* § 500.3847 (requiring filing of advertising materials).

15

Plaintiffs' claim for a breach of the duty of candor is precluded by D.C. trust law, which provides for no such duty. D.C. Code § 19-1301.05(a) (establishing that D.C. Code governs duties owed by trustees to beneficiaries). At most, D.C. trust law requires trustees to fulfill a duty to inform and report, that is, to "keep the qualified beneficiaries of the trust reasonably informed about the administration of the trust and of the material facts necessary for them to protect their interests." D.C. Code § 19-1308.13(a). This duty, however, is owed only to "qualified" beneficiaries who are entitled to (or may permissibly receive) trust distributions. *Id.* § 19-1301.03(14). Because the Declaration of Trust ***prohibits*** the distribution of trust assets to member-insureds, *see* Decl. of Trust art. 9(a)—consistent with the AARP Trust's function to transmit premiums ***to insurers*** and other expenses to third parties—Plaintiffs are not "qualified beneficiaries" within the meaning of D.C. Code § 19-1308.13(a). The Trustees therefore did not even owe them a duty to inform and report, and necessarily breached no such duty.

Further, none of the "internal documents" Plaintiffs quote in the FAC support their theory. The quotations refer to fiduciary duties generally, and, when specific, discuss duties that are consistent with those recognized by D.C. trust law—i.e., the duty to administer the trust prudently and impartially. *See, e.g.*, FAC ¶ 85 (purporting to quote internal AARP document describing the fiduciary duties as "a duty of loyalty, a duty to act in good faith . . ., and a duty of ordinary care, skill, and prudence when administering the trust."). The documents Plaintiffs quote in no way support Plaintiffs' characterization of some kind of fiduciary shortcoming with respect to the royalty disclosures. The "Treasury & Accounting Services Transition" document, which Plaintiffs heavily rely upon, is about switching to a new system that will more adequately administrate premium collections, accounting, credit-card transactions, and the like. This, of course, is consistent with the kind of fiduciary duties recognized by D.C. trust law, such as the

duty to administer trust assets prudently. *See* D.C. Code § 19-1308.04. Contrary to Plaintiffs' suggestions, *see* FAC ¶ 87, these documents do not set standards for AARP's royalty disclosures or handling of the royalty payments.

### 3.   Plaintiffs Fail to Allege Sufficient Facts to Establish a Breach of the Duty of Loyalty.

Plaintiffs' allegation that AARP breached its duty of loyalty fares no better than its claim for breach of the duty of good faith and candor. According to Plaintiffs, AARP engaged in "self-dealing" by allegedly "syphoning 4.95% of the money insureds sent to AARP for AARP Medigap coverage." FAC ¶ 87. But as explained above, the portion of member premiums that are remitted to AARP, Inc. represent a royalty payment and other expenses paid to AARP, Inc. out of program revenues at the direction of United. *See* Agreement § 6.7; Decl. of Trust art. 8(a). These funds would otherwise flow to United. *Id.* Plaintiff's theory is thus foreclosed by the documents memorializing the relationship between the AARP Defendants and United.

Apart from this deficiency, the FAC is also bereft of any factual allegations substantiating Plaintiffs' conclusory assertion of "self-dealing." A generous between-the-lines reading of the FAC suggests that Plaintiffs' theory might be that the AARP Trust is somehow too closely intertwined with AARP, Inc. But as explained above, AARP, Inc. is the settlor of the AARP Trust, which it created to benefit of AARP, Inc. Decl. of Trust, at 1, art. 2(a). The relationship between a settlor and a Trust is not improper. *See* D.C. Code §§ 19-1306.02, 1306.03(a).

In any event, the Trust's payment to AARP, Inc. at United's direction could not possibly have injured Plaintiffs, who again, received precisely the insurance coverage they intended to purchase for the premiums they selected, which United was required by law to charge for their coverage. Had United not directed the AARP Trust to provide the royalty out of premiums to United, the funds would have been paid to United under the Agreement. In no event could the

royalty have gone to Plaintiffs, as that would be an unlawful premium rebate explicitly forbidden by the Medigap regulations, and by the terms of the Declaration of Trust. *See Command Consulting Grp., LLC v. Neuraliq, Inc.*, 623 F. Supp. 2d 49, 55 (D.D.C. 2009) (granting motion to dismiss claim for breach of fiduciary duty when there was no plausible allegation that the alleged breach "proximately caused any injury.").

### 4.     The Declaration of Trust Forecloses Plaintiffs' Theory of a Breach as a Matter of Law.

Finally, Plaintiffs' theory that Defendants had some kind of fiduciary duty to disclose the royalty to Plaintiffs' liking is legally foreclosed by the terms of the Declaration of Trust, which expressly forbids trustees from "[r]eceiving, reviewing, approving and recommending modifications of mailings of the service providers" or "[a]pproving the nature and timing of communications of the service providers and AARP's members." Decl. of Trust art. 7(a)(3)-(4). Thus, per the trust instrument, trustees may not seek to modify or approve communications to member-insureds, including the disclosure with which Plaintiffs apparently take issue. Plaintiffs' theory would require the trustees to violate the express terms of the trust agreement, which is not countenanced by D.C. law. D.C. Code § 19-1308.01 (imposing duty on trustees to administer the trust "in accordance with its terms"); *id.* § 19-1310.06 ("A trustee who acts in reasonable reliance on the terms of the trust as expressed in the trust instrument is not liable to a beneficiary for a breach of trust to the extent the breach resulted from the reliance.").

Plaintiffs' theory is therefore inconsistent with the AARP Trust's governing document. This prevents them from plausibly alleging a breach of fiduciary duty that can survive a motion to dismiss. *Murray v. Wells Fargo Home Mortg.*, 953 A.2d 308, 325 (D.C. App. 2008) ("[F]or the owners to state a claim for breach of fiduciary duty upon which relief could be granted, it was necessary for them to allege some action on the part of the foreclosure trustees that violated

a duty conferred on the trustees by the trust instrument or the foreclosure statute. This they have not done.").

## V.   <u>CONCLUSION</u>

Plaintiffs' new "fiduciary" theory suffers from myriad fatal flaws and it cannot survive as a matter of law. This Court should therefore dismiss Count II of the FAC with prejudice.

Dated: January 13, 2020               Respectfully submitted,

                                  /s/ *Alec W. Farr*
                                  Alec W. Farr (D.C. Bar No. 440046)
                                  Heather S. Goldman (D.C. Bar No. 1001566)
                                  Adam L. Shaw (D.C. Bar No. 1035046)
                                  BRYAN CAVE LEIGHTON PAISNER LLP
                                  1155 F Street, NW
                                  Washington, DC 20004
                                  Phone: (202) 508-6000
                                  Fax:    (202) 508-6200
                                  awfarr@bclplaw.com
                                  heather.goldman@bclplaw.com
                                  adam.shaw@bclplaw.com

                                  Jeffrey S. Russell (admitted *pro hac vice*)
                                  BRYAN CAVE LEIGHTON PAISNER LLP
                                  211 North Broadway, Suite 3600
                                  St. Louis, M) 63102
                                  Phone: (314) 259-2000
                                  Fax:    (314) 259-2020
                                  jsrussell@bclplaw.com

                                  *Attorneys for Defendants AARP, Inc., AARP*
                                  *Services, Inc., and AARP Insurance Plan*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 13, 2020, a true and correct copy of the foregoing

Defendants' Motion to Dismiss Count II of Plaintiffs' First Amended Complaint and

Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss Count II of

Plaintiffs' First Amended Complaint was served upon the following via electronic mail:

Jason S. Rathod (D.C. Bar No. 100082)
Nicholas A. Migliaccio (D.C. Bar No. 484366)
**MIGLIACCIO & RATHOD LLP**
412 H St. NE, Suite 302
Washington D.C. 20002
Telephone: (202) 470-3520
Facsimile: (202) 800-2730
Email: jrathod@classlawdc.com
nmigliaccio@classlawdc.com

Daniel E. Gustafson
Daniel C. Hedlund
David A. Goodwin (Admitted *Pro Hac Vice*)
Brittany N. Resch
Jamie Hozler
**GUSTAFSON GLUEK PLLC**
120 So. 6th St., Ste. 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
Facsimile: (612) 339-6622
Email:dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
dgoodwin@gustafsongluek.com
bresch@gustafsongluek.com
jholzer@gustafsongluek.com

Kevin Landau (Admitted *Pro Hac Vice*)
Brett Cebulash (Admitted *Pro Hac Vice*)
Tess Bonoli (Admitted *Pro Hac Vice*)
**TAUS, CEBULASH & LANDAU, LLP**
80 Maiden Lane, Suite 1204
New York, New York 10038
Telephone: (646) 873-7654
Facsimile: (212) 931-0703
Email: klandau@tcllaw.com
klandau@tcllaw.com
bcebulash@tcllaw.com
tbonoli@tcllaw.com

Scott D. Hirsch
**SCOTT HIRSCH LAW GROUP, PLLC**
7301 W. Palmetto Park Road
Suite 207A
Boca Raton, FL 33433
Telephone: (561) 278-6707
Facsimile: (561) 278-6244
Email:  scott@scotthirschlawgroup.com

*Attorneys for Plaintiff*

/s/      *Adam L. Shaw*
Adam L. Shaw