# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

HELEN KRUKAS, ANDREA KUSHIM, and
GEORGIA LUKE, on behalf of themselves
and all similarly situated,

        Plaintiffs,

        v.

AARP, Inc., *et al.*,

        Defendants.

Civil Action No. 18-1124 (BAH)

Chief Judge Beryl A. Howell

## MEMORANDUM OPINION

This putative class action challenges the role of defendants AARP, Inc., AARP Services,

Inc. ("ASI"), and AARP Insurance Plan ("AARP Trust") (collectively referred to as "AARP") in

soliciting, marketing, and administering a supplemental Medicare health insurance program,

known as a "Medigap" program.  Plaintiffs, who are purchasers of AARP-administered Medigap

policies, filed a First-Amended Class-Action Complaint ("FAC"), ECF No. 40, after the denial

of defendants' motion to dismiss the original complaint, *see Krukas v. AARP, Inc.*, 376 F. Supp.

3d 1, 9 (D.D.C. 2019).[1]  The FAC added a breach of fiduciary duty claim to the four original

claims of a violation of the District of Columbia's Consumer Protection Procedures Act

("CPPA"), D.C. CODE § 28-3901 *et seq.*, and common law claims of conversion, unjust

enrichment, and fraudulent concealment.  *See* FAC ¶¶ 117–20.  Pending now is defendants'

motion to dismiss, under Federal Rule of Civil Procedure 12(b)(6), the new breach of fiduciary

duty claim.  *See* Defs.' Mot. to Dismiss Count II of Pls.' FAC ("Defs.' Mot."), ECF No. 42;

---

[1]     A sealed version of the FAC ("Sealed FAC") is docketed at ECF 41.  The plaintiffs also filed public and sealed versions of their memorandum in opposition to the motion to dismiss, *see* Pls.' Mem. Opp'n to Defs.' Mot. to Dismiss Pls.' FAC ("Pls.' Opp'n"), ECF No. 46 and ECF No. 47 ("Sealed Pls.' Opp'n").  The sealed version of the FAC is cited and quoted where necessary to capture allegations redacted in the FAC.

Defs.' Mem. Supp. Mot. to Dismiss Count II of Pls.' FAC ("Defs.' Mem."), ECF No. 42.  For

the reasons explained, defendants' motion is granted, and Count II of the FAC is dismissed

without prejudice.

## I.    BACKGROUND

The factual allegations relevant to Count II of the FAC are summarized below, along

with this case's procedural history.  Additional background, including descriptions of plaintiffs'

CPPA, conversion, unjust enrichment, and fraudulent concealment claims, is set out in the prior

decision and will not be repeated here.  *See Krukas*, 376 F. Supp. 3d at 9–14.

### A.    Factual Allegations

Defendant AARP, Inc. is a non-profit membership organization for seniors aged 50 and

older.  *See* FAC ¶¶ 25, 30.  UnitedHealthcare ("United"), a health insurance company that is not

a party here, insures a set of Medigap policies offered to AARP members, subject to

state-specific regulation and approval.  *See id.* ¶ 36; *see also Krukas*, 376 F. Supp. 3d at 15

(explaining that Medigap policies are regulated by states).  Medigap insurance supplies coverage

for some healthcare costs not covered by Medicare.  *See Krukas*, 376 F. Supp. 3d at 10; *see also*

42 U.S.C. § 1395ss.

Plaintiff Helen Krukas, currently a Florida resident, purchased AARP Medigap coverage

in 2012 and renewed that coverage monthly through November 2016.  FAC ¶ 22.  Plaintiff

Andrea Kushim, a Michigan resident, bought AARP Medigap coverage in December 2016,

which she renewed through the filing of the FAC.  *Id.* ¶ 23. Plaintiff Georgia Luke, also a

Michigan resident, purchased coverage in July 2017 and has renewed it through the filing of the

FAC.  *Id.* ¶ 24.  All three plaintiffs are also members of AARP, Inc.  *See id.* ¶ 76.  Plaintiffs

bring this action individually and on behalf of a putative class comprised of "[a]ll persons in the

United States who purchased or renewed an AARP Medigap Policy."  *Id.* ¶ 97.

An agreement between AARP and United governs AARP and United's relationship related to the AARP Medigap policies. *Id.* ¶ 42. United insures the AARP Medigap coverage through a group policy issued to defendant AARP Trust, "a grantor trust organized by AARP, Inc. under" District law. *Id.* ¶ 27. AARP Trust, as group policyholder, collects coverage premiums from the insured and transmits those payments, minus certain expenses, to United. *Id.* One of the expenses withheld is a fee, amounting to 4.95% of the premiums, retained by the AARP Trust, *id.*, and then passed along to AARP, Inc. and ASI, *id.* ¶ 60. The agreement between AARP, Inc. and United terms this payment a "royalty" for United's use of AARP's reputation, membership lists, and marks in offering the AARP Medigap policies. *Id.* ¶¶ 45–47. Plaintiffs allege, however, that "the payment is not a royalty but, in fact, an illegal commission that AARP collects for soliciting its members to purchase AARP Medigap Policies and collecting premiums from them and remitting those premiums to UnitedHealth." *Id.* ¶ 6. "Defendants do not," the FAC alleges, "disclose that the amounts members are paying are not just 'premiums' to pay for the actual insurance coverage, and the administrative expenses incurred by the AARP Trust, but a 4.95% commission on top of the premiums that AARP remits to UnitedHealth." *Id.* ¶ 70.

Count II of the FAC, at issue here, alleges, referring to the defendants collectively as AARP, that "AARP owed Plaintiffs and the Class a fiduciary duty," *id.* ¶ 118, and that "AARP breached its fiduciary duties of candor, good faith, and loyalty by, among other things, (1) failing to disclose to the Class, or misleading the Class about, the true nature and the amount of AARP's royalty payments, and (2) engaging in self-dealing by syphoning 4.95% from the Class's payments for AARP Medigap Policies," *id.* ¶ 119. These breaches of fiduciary duty, the FAC alleges, "harmed Plaintiffs and the Class in the amount of the undisclosed 4.95% that AARP kept

for itself before remitting Plaintiffs' and the Class's Medigap premiums to UnitedHealth." *Id.*
¶ 120.

### B.  Procedural History

Krukas filed the original complaint, "individually, and on behalf of all others similarly
situated (except for individuals residing in California), as well as the general public," *Krukas*,
375 F. Supp. 3d at 9, on May 1, 2018, *see* Compl., ECF No. 1.  That original complaint raised
four claims:  Count One alleged that AARP violated the CPPA by misrepresenting material facts
about the 4.95% payment and about AARP's lack of license as an insurance broker or agent.  *Id.*
¶¶ 92–103.  Count Two claimed that defendants' conversion of her ownership right to the 4.95%
payment entitled her to damages in the amount she was wrongfully charged.  *Id.* ¶¶ 104–07.
Count Three alleged unjust enrichment based on defendants' retention of the 4.95% payment
from plaintiff.  *Id.* ¶¶ 109–11.  Finally, Count Four alleged fraudulent concealment because
defendants concealed or failed to disclose the 4.95% payment, a material fact that defendants
should have known should be disclosed or not concealed and that defendants concealed despite
defendants' "duty to speak." *Id.* ¶¶ 112–18.

Defendants' motion to dismiss the original complaint under Rule 12(b)(6) argued that
several doctrines required dismissal of all Counts and, in the alternative, that the complaint's
factual allegations were insufficient to support the claims.  *See generally* Defs.' First Mot. to
Dismiss, ECF No. 8.  As already stated, *Krukas* denied the motion.  *See* 376 F. Supp. 3d. at 9.
First, *Krukas* concluded that the primary jurisdiction doctrine, which is applicable only in cases
involving issues that fall "within the special competence of an administrative body," did not
require staying or dismissing the CPPA and common law claims.  *Id.* at 15 (quoting *United
States v. W. Pac. R.R. Co.*, 352 U.S. 59, 63–64 (1956)).  Second, the filed-rate doctrine, which
bars certain suits challenging the reasonableness of regulatory rates approved by administrative

bodies, *see id.* at 17–20 (describing the filed-rate doctrine), did not bar the claims as pled in the complaint, *see id.* at 20–26 (explaining this conclusion).[2]  Although the suit "ha[s] *some* relation to filed rates for state insurance coverage," *Krukas* reasoned, the complaint attacks not the reasonableness of rates filed by United and approved by the applicable state insurance regulator but instead the "fraudulent misrepresentation" of a "a third-party doing business with" the entity whose rates are regulated.  *Id.* at 22 (emphasis in original).  Third, after determining that District law governed the dispute, *see id.* at 27–32 (conducting a choice of law analysis), *Krukas* deemed "dismissal for statute of limitations reasons . . . not appropriate at this time": with key facts still "unknown," the complaint was not "'on its face' conclusively time barred."  *Id.* at 33–34 (quoting *Bregman v. Perles*, 747 F.3d 873, 875 (D.C. Cir. 2014)).  Finally, *Krukas* ruled that the original complaint plausibly stated a claim for relief on each of the four Counts.  *See id.* at 34–47.

With defendants' consent, the FAC, which added two plaintiffs — Kushim and Luke — as well as the breach of fiduciary duty claim, was filed on November 27, 2019.  *See* FAC.[3] Defendants responded with the pending motion to dismiss Count II of the FAC, which motion became ripe for resolution on March 4, 2020, with the filing of defendants' reply.  *See* Defs.' Reply Mem. Supp. Defs.' Mot. to Dismiss Count II of Pls.' FAC ("Defs.' Reply") at 6, ECF No. 48[4]

---

[2]     *Krukas* assumed without deciding that the filed-rate doctrine "extend[ed] beyond comprehensive federal regulatory schemes" to "a case raising state-law claims implicating state-regulated insurance rates."  376 F. Supp. 3d at 20.

[3]     The FAC also adds California residents to the class.  *See* FAC ¶ 97 (alleging a nationwide class).

[4]     The defendants' request for oral argument is denied because the briefing is sufficient to resolve the pending motion.  *See* D.D.C. Local Civil Rule 7(f) (allowance of an oral hearing is "within the discretion of the Court").

## II.     LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Wood v. Moss*, 572 U.S. 744, 757–58 (2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A facially plausible claim pleads facts that are not "'merely consistent with' a defendant's liability" but that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)); *see also Rudder v. Williams*, 666 F.3d 790, 794 (D.C. Cir. 2012). In deciding a motion under 12(b)(6), the court must consider the whole complaint, accepting all factual allegations as true, "even if doubtful in fact." *Twombly*, 550 U.S. at 555. Courts do not, however, "assume the truth of legal conclusions, nor do [they] 'accept inferences that are unsupported by the facts set out in the complaint.'" *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) (alteration in original) (internal citation omitted) (quoting *Islamic Am. Relief Agency v. Gonzales,* 477 F.3d 728, 732 (D.C. Cir. 2007)).

## III.     DISCUSSION

Defendants have moved to dismiss Count II of the FAC, which asserts a claim for breach of fiduciary duty against each defendant, on alternative grounds. First, defendants argue that the facts alleged in the FAC cannot establish the necessary fiduciary relationship between the plaintiffs and any defendant. *See* Defs.' Mem. at 7–13. Even if the complaint pleads the necessary fiduciary relationships, defendants contend dismissal is still warranted for the FAC's failure to allege plausibly any breach of the defendants' fiduciary duties. *Id.* at 13–19. As explained below, the FAC has not plausibly alleged the necessary fiduciary relationships, so

Count II will be dismissed on that ground, without reaching the defendants' alternative argument.[5]

### A.      Relevant Legal Principles

Under District law, a breach of fiduciary duty claim must allege facts sufficient to show (1)  the defendant owed the plaintiff a fiduciary duty; (2) the defendant breached that duty; and (3) the plaintiff suffered injury proximately caused by that breach.  *See Armenian Assembly of Am., Inc. v. Cafesjian*, 758 F.3d 265, 275 (D.C. Cir. 2014); *Pietrangelo v. Wilmer Cutler Pickering Hale & Dorr, LLP*, 68 A.3d 697, 711–12 (D.C. 2013).

Certain relationships, such as the attorney-client or doctor-patient relationship, automatically trigger fiduciary duties.  *See, e.g.*, *Bolton v. Crowley, Hoge & Fein, P.C.*, 110 A.3d 575, 584 (D.C. 2015) ("'An agent owes [his] principal a fiduciary duty and a duty of loyalty,' and '[l]ike other agents, lawyers owe their clients a duty of loyalty and a duty of care.'" (alterations in original) (quoting *Gov't of Rwanda v. Rwanda Working Grp.*, 227 F. Supp. 2d 45, 63, 64 (D.D.C. 2002)); RESTATEMENT (SECOND) OF TRUSTS § 2 (1959) ("Fiduciary relations include not only the relation of trustee and beneficiary, but also, among others, those of guardian and ward, agent and principal, attorney and client.  Each member of a partnership is in a fiduciary relation to the other partners.").

A fiduciary relationship can also arise where the facts and circumstances "show that the parties extended their relationship beyond the limits of contractual obligations" or ordinary business relations "to a relationship founded upon trust and confidence."  *Ying Qing Lu v. Lezell*,

---

[5]        The ruling that the FAC has not pled that defendants owed plaintiffs fiduciary duties does not disturb the ruling in *Krukas* that the complaint stated a claim for fraudulent misrepresentation, as plaintiffs could still prove that defendants had a duty to disclose arising from superior knowledge.  *See* 376 F. Supp. 3d at 46 ("Under District of Columbia law, a party to a transaction has no duty of disclosure unless the party is a fiduciary to the other or the party knows that the other is acting unaware of a material fact that is unobservable or undiscoverable by an ordinarily prudent person upon reasonable inspection.").

919 F. Supp. 2d 1, 6 (D.D.C. 2013) (quoting *Paul v. Judicial Watch, Inc.*, 543 F. Supp. 2d 1, 6 (D.D.C. 2008)); *see also High v. McLean Fin. Corp.*, 659 F. Supp. 1561, 1568 (D.D.C. 1987) ("One characteristic that District of Columbia courts have traditionally looked for is a 'special confidential relationship' that transcends an ordinary business transaction and requires each party to act with the interests of the other in mind."); *see also Urban Inv., Inc. v. Branham*, 464 A.2d 93, 96 (D.C. 1983) (concluding that no fiduciary relationship existed where no "special confidential relationship was established" requiring the defendant "to treat [a] sale as anything other than an ordinary business transaction.").[6]  "[T]he mere existence of a contract" or ordinary business relationship, however, "does not create a fiduciary duty." *Paul*, 543 F. Supp. 2d. at 6. Set against these standards, each defendant's dealings with plaintiffs is evaluated for the existence of a fiduciary relationship.

### B.    Defendant ASI

ASI is a taxable subsidiary of AARP that "negotiates, oversees, and manages . . . contracts with AARP's insurance-business partners."  FAC ¶ 26.  The FAC alleges that ASI played a behind-the-scenes role in the AARP Medigap insurance program, including by reviewing United's business plans and approving marketing materials.  *Id.* ¶ 53.  ASI also allegedly received 8% of the 4.95% payment, with the remaining 92% going to AARP, Inc.  *Id.* ¶ 62.  Count II makes no reference to ASI.  *See id.* ¶¶ 117–20; *see also id.* ¶¶ 82–88 (failing to name ASI in section of the FAC entitled "AARP owes fiduciary duties to Plaintiffs and the Class").

---

[6]      Plaintiffs posit that District law is uniquely "flexible," Pls.' Opp'n at 9, but District law is no different from the law of most states, *see* 37 Am. Jur. 2d Fraud and Deceit § 37 ("There are two types of fiduciary relationships: formal fiduciary relationships that arise as a matter of law, such as attorney-client, partnership, trustee, and principal-agent relationships; and informal fiduciary relationships or confidential relationships that may arise from moral, social, domestic, or personal relationships.").

These allegations fall well short of pleading that ASI owed plaintiffs any fiduciary duties. Nothing in the FAC indicates that plaintiffs had any contact with ASI, let alone that plaintiffs had the sort of special relationship of trust or confidence with ASI that can give rise to fiduciary duties.  *See, e.g.*, *Sandza v. Barclays Bank PLC*, 151 F. Supp. 3d 94, 107 (D.D.C. 2015) (concluding that no fiduciary relationship existed between plaintiff and defendant where plaintiff "does not even allege that [defendant] had any direct contact with her"); *Steele v. Isikoff*, 130 F. Supp. 2d 23, 37 (D.D.C. 2000) (dismissing breach of fiduciary duty claim where plaintiff's relationship with defendant "was simply too fleeting and too superficial to give rise to a fiduciary duty").  Count II will be dismissed without prejudice as to ASI.

### C.    Defendant AARP, Inc.

Plaintiffs theorize that a fiduciary relationship arose between AARP, Inc. and plaintiffs because AARP, Inc. "markets itself as an unbiased advocate for its members," thereby placing itself "in a unique position of trust when promoting and administering AARP Medigap programs."  FAC ¶ 86; *see also id.* ¶ 118 ("AARP repeatedly held itself out to the Class as an unbiased advocate working on their behalf."); Pls.' Opp'n at 1 ("Defendants market AARP as an unbiased advocate for seniors.  Defendants understand that AARP members value this advocacy and viewed AARP as a trusted source when purchasing AARP Medigap insurance.").  Defendants counter that this theory fails to "distinguish [AARP, Inc.] from scores of other membership organizations," which generally do not owe fiduciary duties to their members.  Defs.' Mem. at 12.  Defendants are right.

Plaintiffs' effort to contest defendants' characterization of the law misses the mark.  Plaintiffs say that "[a]ffected parties can hold a D.C. non-profit corporation liable for breach of fiduciary duty," *see* Pls.' Opp'n at 17 (quoting *Tex. Rural Legal Aid, Inc. v. Legal Servs. Corp.*, 740 F. Supp. 880, 881 n.1 (D.D.C. 1990), *rev'd on other grounds*, 940 F.2d 685 (D.C. Cir.

1991)), relying on cases in which beneficiaries or members of non-profit organizations alleged mismanagement by those organizations' directors.[7]  These cases recognize not that District non-profit organizations owe enforceable fiduciary duties directly to beneficiaries or members but that beneficiaries or members occasionally have standing to enforce, derivatively, fiduciary duties owed by non-profit directors to the non-profit organization.  *See* D.C. CODE § 29-411.02 (codifying, in 2011, standing of certain groups to bring a derivative action on behalf of a non-profit organization); *see also id.* § 29-411.01 (defining "derivative proceeding").  The existence of such a cause of action does not help plaintiffs, whose suit could not be construed as seeking to protect, derivatively, AARP, Inc.'s interests.

Nor does *Daley v. Alpha Kappa Alpha Sorority, Inc.*, 26 A.3d 723 (D.C. 2011), also cited by plaintiffs, *see* Pls.' Opp'n at 17 n.51, help them.  *Daley*, too, is a case about standing to enforce the internal rules governing the non-profit sorority.  In *Daley*, suspended sorority members sued the sorority, which was a non-profit, and the sorority's directors, accusing the directors of violating the sorority's by-laws and constitution.  Although the plaintiffs had sued in their "own names rather than" derivatively, the D.C. Court of Appeals held that the plaintiffs had standing to bring their claims, ruling that "the individual rights of the plaintiffs were affected by the alleged failure to follow the dictates of the constitution and by-laws and they thus had a direct, personal interest in the cause of action, even if the corporation's rights are also implicated."  *Daley*, 26 A.3d at 729 (internal quotation marks omitted).  Although the plaintiffs

---

[7]       *Texas Rural Legal Aid* did not even involve a breach of fiduciary duty claim.  The quote above is *dicta*, in a footnote, speculating that a federal district court might have diversity jurisdiction to hear a breach of fiduciary duty claim by an out-of-state organization dependent on a District nonprofit for funding.  740 F. Supp. 881 n.1.  *Texas Rural Legal Aid* cited *Stern v. Lucy Webb Hayes National Training School for Deaconesses & Missionaries*, 381 F. Supp. 1003 (D.D.C. 1974), which held that former patients of Sibley Hospital, then a District nonprofit, could sue the directors of the hospital for breaching fiduciary duties in allegedly mismanaging hospital funds.  *Stern* is unhelpful to plaintiffs for the reasons discussed in the text.  *See Christiansen v. Nat'l Sav. & Tr. Co.*, 683 F.2d 520, 528 (D.C. Cir. 1982) ("A close reading of *Stern* makes it sufficiently clear that the fiduciary duties of directors of a nonprofit hospital run to the hospital and not directly to the patients as beneficiaries.").

in *Daley* brought, among others, a breach of fiduciary duty claim, neither *Daly*, nor any other D.C. Court of Appeals case, actually analyzes the issue presented here: when, if ever, does a non-profit membership organization owe fiduciary duties to its members? *See Jackson v. George*, 146 A.3d 405, 415 (D.C. 2016) (reading *Daley* as about "the requirement of derivative suits" (quoting *Daley*, 26 A.3d at 729)).

On the issue presented here, defendants are correct that the relationship between a large membership organization like AARP, Inc. and its members is typically an ordinary business relationship, not one of special trust or confidence creating fiduciary duties. *See Magee v. Am. Inst. of Certified Pub. Accountants*, 245 F. Supp. 3d 106, 116 (D.D.C. 2017) (granting motion to dismiss breach of fiduciary duty claim by member of professional association against the association because "[t]he plaintiff cites no case law, nor could the Court find any, that supports the proposition that a professional membership organization owes any fiduciary duty to its members"); *see also Sweigert v. Perez*, 334 F. Supp. 3d 36, 45 n.8 (D.D.C. 2018) (ruling that Democratic National Committee did not owe fiduciary duty to its donors). Cases like *Daley*, just discussed, reflect this general rule. *Daley* involved a rare exception to the principle that "suits alleging wrongs against a corporation [must] be brought derivatively." *Jackson*, 146 A.3d at 415 n.6. Indeed, even derivative suits by non-profit members and beneficiaries remain relatively rare, an exception to the traditional rule "preventing . . . private actions" against non-profit organizations for misconduct, in favor of enforcement by state attorneys general. Mary Grace Blasko et. al., *Standing to Sue in the Charitable Sector*, 28 U.S.F. L. REV. 37, 38 (1993); *cf.* RESTATEMENT OF PRINCIPLES OF THE LAW OF NONPROFIT ORGANIZATIONS § 6.03 (2017) (Draft) ("Under the common law, other private parties — such as donors . . . , founders, beneficiaries, and members of the public — typically could not bring claims to enforce the

charitable purposes or administrative terms governing charitable assets.").  If membership organizations ordinarily owed fiduciary duties to their members, private-party suits against non-profits like AARP, Inc. would not be such a rarity.

Attempting to distinguish this case from the typical one, plaintiffs highlight the FAC's allegations that AARP, Inc. "sought and obtained member-insured's confidence" by marketing itself as an advocate and "acted on Plaintiffs' behalf in designing and overseeing AARP Medigap."  Pls.' Opp'n at 17.  Even crediting those allegations, the only reasonable inference that can be drawn from the FAC is that AARP, Inc. interacts with its members at arm's length, not with the sort of intimacy, confidence, and trust that typify fiduciary relationships, *High*, 659 F. Supp. at 1568 (noting that "arms-length" interactions do not give rise to fiduciary duties); *see also, e.g.*, *Meinhard v. Salmon*, 164 N.E. 545 (N.Y. 1928) (Cardozo, C.J.) ("Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties.").

To explain further, the FAC alleges that AARP, Inc. "markets itself as a protector and advocate of the nation's senior community" and "is reported to have 40 million members."  FAC ¶ 2; *see also* Sealed FAC ¶ 86 (quoting from AARP, Inc. internal documents about marketing strategy).  Advertising, especially on such a mass scale, even when successful in gaining the target's confidence, is impersonal, and is thus not the sort of communication that characterizes fiduciary relationships.  *See Jones v. D.C.*, 241 F. Supp. 3d 81, 90 (D.D.C. 2017), *aff'd*, 715 F. App'x 1 (D.C. Cir. 2018) (rejecting claim based on public school system's statement of purpose that public school system owed a fiduciary duty to its students).  Moreover, that an organization like AARP, Inc. does not become a fiduciary to its membership simply by cultivating a trustworthy reputation is evident in the consensus that commercial entities, which depend on and

seek out consumers' trust, do not owe fiduciary duties to ordinary customers.  *See, e.g.*, *Geiger v. Crestar Bank*, 778 A.2d 1085, 1091 (D.C. 2001) ("[A] bank generally owes no fiduciary duty to its depositors." (quoting *Miller v. Am. Nat'l Bank & Trust Co. of Chi.*, 4 F.3d 518, 520 (7th Cir. 1993))); *Apollo v. CVS Pharm.*, No. 17-1775, 2019 WL 147475, at *3 n.2 (D.D.C. Jan. 9, 2019) (dismissing fiduciary duty claim by customer and retail rewards member against retailer). Features of AARP, Inc. that make it unlike a bank or other commercial entity — serving the senior population, FAC ¶ 92 (referencing "unsuspecting senior citizens"), and status as a nonprofit, *id.* ¶ 25 — do not transform the relationship between AARP, Inc. and its members from ordinary to fiduciary, *see, e.g.*, *Levay v. AARP, Inc.*, No. 17-09041 DDP (PLAX), 2019 WL 2108124, at *5 (C.D. Cal. May 14, 2019) ("Plaintiffs, however, do not cite to any authority supporting the theory that AARP should be held to a 'higher duty' than a for-profit corporation because it is a non-profit."); *cf. Jones*, 241 F. Supp. 3d at 90 (no fiduciary duty owed by school system to children); *McDonnell Douglas Corp. v. Gen. Tel. Co. of Ca.*, 594 F.2d 720, 725 (9th Cir. 1979) (rejecting theory that public utility owed fiduciary duty to customers because of its status as a public utility).

As plaintiffs highlight, the FAC also alleges that AARP, Inc.'s fiduciary duties grew out of its "act[ions] on Plaintiffs' behalf in designing and overseeing AARP Medigap."  Pls.' Opp'n at 17; *see, e.g.*, FAC ¶ 15 ("AARP started the AARP Medigap program to benefit its members."); Sealed FAC ¶ 86 (alleging, based on quotes from internal AARP documents, that AARP, Inc. leveraged its reputation as an advocate for members to create and endorse products like the Medigap program).  The absence of any allegation in the FAC that AARP, Inc. interacted with plaintiffs in its capacity as "design[er] and oversee[r]" of AARP Medigap defeats this theory.  Pls.' Opp'n at 17.  Although the FAC does not separate with precision the actions of

AARP, Inc., from the actions of AARP Trust and ASI, the FAC does make clear that AARP

Trust, the group policyholder, and not AARP, Inc., interacted with plaintiffs by collecting their

premiums.  FAC ¶ 27 (alleging that "AARP Trust . . . collects the illegal 4.95% commission

directly from Plaintiffs and Class Members").  To the extent that simply designing and

overseeing an insurance program creates a relationship between the designer and the insured, that

relationship is not a fiduciary one.  *See Attias v. CareFirst, Inc.*, 365 F. Supp. 3d 1, 23 (D.D.C.

2019) ("'District of Columbia law does not . . . consider the relationship between insurer and

insured a fiduciary relationship' as a matter of law." (alteration in original) (quoting

*Gebretsadike v. Travelers Home & Marine Ins. Co.*, 103 F.Supp.3d 78, 83 (D.D.C. 2015));

*Fireman's Fund Ins. Co. v. CTIA*, 480 F. Supp. 2d 7, 15 (D.D.C. 2007) ("As a general matter,

'[m]ost States treat the relationship between insurer and insured as a matter of contract, not a

fiduciary relationship' . . . " (quoting *John Hancock Mut. Life Ins. Co. v. Harris Trust & Sav.

Bank*, 510 U.S. 86, 119 (1993)).

Finally, plaintiffs argue that AARP, Inc.'s relationship with its members was fiduciary

because AARP, Inc. saw the relationship that way.  *See* Pls.' Opp'n at 5–6, 11–12.  The two

"internal AARP documents," FAC ¶ 85, that plaintiffs say show that AARP, Inc. "considered"

itself "to actually be Plaintiffs' fiduciar[y]," Pls.' Opp'n at 18, do not establish what plaintiffs

suggest.[8]  First, "The Changing Senior Landscape (Draft)," quoted in the FAC, advances the

unremarkable proposition that the trustees of the AARP Trust owed fiduciary duties to the

beneficiaries of the trust.  *See* Sealed FAC ¶ 85 ("AARP noted that, '[u]nder the law, *trustees*

---

[8]      Defendants say that neither of the two "internal AARP documents" was "written by and finally adopted by
one of the Defendants."  Defs.' Reply at 5; *see also* Defs.' Mem. at 12 & n.6.  The first document, "The Changing
Senior Landscape (Draft)," is labeled a draft in the FAC, *see* Sealed FAC ¶ 85, and the second, according to
defendants, "is an initial draft created by a third party," not by any defendant, Defs.' Mem. at 12 n.6.  Even
assuming the documents were authentic and probative of AARP, Inc.'s actual thinking, the documents do not help
plaintiffs.

have fiduciary duties to administer the Trust in the best interest of the beneficiaries of the Trust — AARP and its members." (emphasis added)).  Given that all agree that AARP, Inc. was not a trustee of the AARP Trust, *see* Pls.' Opp'n at 12 (stating that "ASI [and] AARP . . . are not trustees" of the AARP Trust); Defs.' Reply at 6, "The Changing Senior Landscape (Draft)" does not help plaintiffs.  Another document quoted in the FAC, titled "AARP Insurance Plan / Treasury & Accounting Services Transition," does state: "[t]he Trust and AARP are required to uphold a fiduciary responsibility on behalf of the member base."  Sealed FAC ¶ 85.  Even if this statement is read as plaintiffs read it, as an "admission" by AARP, Inc. that AARP, Inc. owes fiduciary duties to members, Pls.' Opp'n at 17, Count II still does not clear the pleading threshold.  True, as plaintiffs point out, "the existence of a fiduciary duty is partly triggered by expectations of the parties."  *Id.* at 18 (citing *Firestone v. Firestone*, 76 F. 3d 1205, 1211 (D.C. Cir. 1996)).  Those expectations, though, must be "legitimate" and must be considered as part of "a searching inquiry into the nature of the relationship, the promises made, [and] the type of services or advice given."  *Firestone*, 76 F.3d at 1211 (quoting *Church of Scientology Int'l v. Eli Lilly & Co.*, 848 F. Supp. 1018, 1028 (D.D.C. 1994)).  Those other circumstances, as already explained, do not suggest that AARP, Inc. owed fiduciary duties to plaintiffs.  A single sentence in an AARP, Inc. "internal document" cannot change that.

In short, Count II is dismissed without prejudice as to AARP, Inc.

### D.      Defendant AARP Trust

Plaintiffs argue that AARP Trust owed them a fiduciary duty on one of two theories. First, plaintiffs argue that "the AARP Trust owed an escrow-based fiduciary duty to plaintiffs" because AARP Trust collected plaintiffs' premium payments and then remitted those payments to United.  Pls.' Opp'n at 28.  Second, plaintiffs argue that they were trust beneficiaries, *see* FAC ¶ 85; Pls.' Opp'n at 14, and trustees owe beneficiaries fiduciary duties, *see, e.g.*, D.C. CODE

§ 19-1301.05(b) (duty of good faith); *id.* § 19-1308.02 (duty of loyalty); *id.* § 19-1308.03 (duty of impartiality).  The FAC fails to plead that AARP Trust owed plaintiffs fiduciary duties under either theory.

### 1. Escrow-Based Theory

Under District law, "the escrow/depositor relationship [i]s fiduciary," *Wagman v. Lee*, 457 A.2d 401, 405 (D.C. 1983), but AARP Trust was not in an escrow/depositor relationship with plaintiffs.  Plaintiffs argue that such a relationship existed because "one of the primary purposes of the AARP Trust was to take control of Plaintiffs' premium payments; hold them for a period of time; and then deliver them to United, on Plaintiffs' behalf" and because "the Trust was designed to handle Plaintiffs' money, for Plaintiffs' sake," Pls.' Opp'n at 13 (citing FAC ¶¶ 27, 60–64, 83, 85, 118).  Although an escrow arrangement involves a third party holding and transmitting property between two other parties, often for the benefit of one party, not every arrangement involving the holding and transmitting of property between two parties for one party's benefit is an escrow arrangement.  Instead, "a valid escrow arrangement," the D.C. Court of Appeals has explained, requires something specific: "[f]irst[,] . . . a contract between" a promisor and a promisee "agreeing to the conditions of a deposit, then . . . delivery of the items on deposit to the escrow agent," who "must agree to perform the function of receiving and dispersing the items."  *Ferguson v. Caspar*, 359 A.2d 17, 20–21 (D.C. 1976).  The hallmark of an escrow arrangement is the agreement between the promisor and the promisee that the property transfer will not occur "until certain conditions are performed."  *Id.* at 20; *see also id.* ("[N]o precise form of words is necessary to create an escrow but it must appear from all the facts and circumstances surrounding the execution and delivery of the instruments that they were not to take effect until certain conditions are performed."); *Escrow*, BLACK'S LAW DICTIONARY 662

(10th ed. 2014) ("A legal document or property delivered by a promisor to a third party to be

held by the third party for a given amount of time or until the occurrence of a condition, at which

time the third party is to hand over the document or property to the promise."); 30A CORPUS

JURIS SECUNDUM, Escrows § 1 ("An 'escrow' may be generally defined as a deed, other written

instrument, or property deposited with a third person to be held for delivery to the grantee or

obligee on the performance of a condition or the happening of a certain event."); RESTATEMENT

(SECOND) OF CONTRACTS § 103 (1981) (stating that, in an escrow arrangement, "one or both

parties to a transaction deposit property or an instrument with a third party until some condition

has occurred.").  Thus, an escrow is not just any arrangement to transfer property: an escrow is

"a security device," RESTATEMENT (SECOND) OF CONTRACTS § 103, that "assure[s] the carrying

out of an obligation" — the conditions triggering transfer — "already contracted for," 30A

CORPUS JURIS SECUNDUM, Escrows § 1.

The FAC contains no indication that AARP Trust was such a security device for plaintiffs

and United.  Indeed, as will be discussed further, the FAC alleges that "AARP[, Inc.] created the

AARP Trust."  FAC ¶ 83.  Moreover, AARP Trust's obligation to deliver plaintiffs' payments to

United is not alleged to be conditioned on the occurrence of any event or the performance of any

obligation.  *See* FAC ¶ 61 (alleging that AARP Trust collects payments from plaintiffs and then

remits them to United "[a]s premium payments become due").  The absence of such conditions,

which typify an escrow arrangement, means that AARP Trust was not acting, as an escrow

holder does, as the agent of plaintiffs and United.  While the fiduciary duties of an escrow holder

arise out of this status as an agent, *see Wagman*, 457 A.2d at 404 (basing the conclusion that an

escrow/depositor relationship is fiduciary on the agent/principal character of the relationship), no

fiduciary duties arise from AARP Trust's arm's length role in collecting and remitting payments,

*cf. Geiger*, 778 A.2d at 1091 ("[A] bank generally owes no fiduciary duty to its depositors."

(quoting *Miller*, 4 F.3d at 520)).

### 2. Beneficiaries of the Trust Theory

Finally, plaintiffs argue that they were beneficiaries of AARP Trust and that AARP Trust

thus owed them the fiduciary duties ordinarily owed to trust beneficiaries.  *See* FAC ¶ 85; Pls.'

Opp'n at 14–15.  Defendants counter with three alternative arguments:  First, because the FAC

alleges that AARP Trust is a revocable trust, "rights of the beneficiaries are subject to the control

of, and the duties of the trustee are owed exclusively to, the settlor," D.C. Code § 19-1306.03(a),

and the settlor is AARP, Inc., not plaintiffs, *see* Defs.' Mem. at 7–8.  Second, only trustees of the

AARP Trust could owe fiduciary duties to beneficiaries of the AARP Trust, and none of

defendants is a trustee of the AARP Trust.  *See* Defs.' Mem. at 9 n.4; Defs.' Reply at 4–6.  Third,

even if plaintiffs could somehow get around the first and second problems, plaintiffs'

beneficiary-based theory fails because plaintiffs are not beneficiaries of the AARP Trust.  *See*

Defs.' Mem. at 8–9; Defs.' Reply at 6–8.[9]  Defendants' first and second arguments are less

---

[9]      Two of defendants' arguments depend on the Declaration of Trust attached to defendants' motion, *see*
Defs.' Mot., Ex. 4, Declaration of Trust, ECF No. 42-4, but not explicitly referenced in or appended to the FAC, *see
generally* FAC ¶¶ 83–85 (discussing the creation, structure, and obligations of the AARP Trust).  Plaintiffs argue
that the FAC thus "doesn't rely on" the Declaration of Trust, putting the document "outside the scope of the
pleadings" and beyond what can be considered, at least without converting the motion to dismiss to a motion for
summary judgment.  Pls.' Opp'n at 9; *see also* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c),
matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for
summary judgment under Rule 56.").  Documents not explicitly referenced in a complaint but on which a complaint
"necessarily relies" are not outside the pleadings, however, and can be considered without converting the motion.
*Hinton v. Corrections Corp. of Am.*, 624 F. Supp. 2d 45, 46 (D.D.C. 2009) ("Matters that are not 'outside' the
pleadings a court may consider on a motion to dismiss include . . . documents 'upon which the plaintiff's complaint
necessarily relies' even if the document is produced not by the plaintiff in the complaint but by the defendant in a
motion to dismiss. (quoting *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998))); *see also Pension Ben. Guar.
Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("[A] court may consider an undisputedly
authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based
on the document.").  "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply
by failing to attach a dispositive document on which it relied."  *Pension Ben. Guar. Corp.*, 998 F.2d at 1196.  Here,
as defendants insist, "allegations in the FAC necessarily depend on the Declaration of Trust."  Defs.' Reply at 4 n.1.
For example, the Declaration of Trust controls whether the plaintiffs are, as the FAC alleges, "identified as

straightforward than the last, so this analysis begins by asking the root question: do plaintiffs

plausibly allege that they are beneficiaries of the AARP Trust?[10]  They do not and cannot.

Beneficiaries "ha[ve] a present or future beneficial interest in a trust, vested or

contingent."  D.C. Code § 19-1301.03(2) (defining "beneficiary"); *see also* RESTATEMENT

(THIRD) OF TRUSTS § 3 (defining trust beneficiary as "[a] person for whose benefit property is

held in trust").  As plaintiffs see it, they "have a beneficial interest in the Trust" because "the

Trust was primarily designed to hold Plaintiffs' Medigap insurance policies and facilitate

Plaintiffs' Medigap premium payments."  Pls.' Opp'n at 14 n.37.  The Declaration of Trust,

however, shows that this was not the Trust's primary purpose and that any benefits plaintiffs

derive from operation of the Trust are incidental, not beneficial.  "[A] person who merely

benefits incidentally from the performance of [a] trust is not a beneficiary."  RESTATEMENT

(THIRD) OF TRUSTS § 48.

The Declaration of Trust, in describing the AARP Trust's purposes, states that the Trust

"will be maintained for the purposes of assisting AARP to make available for members of AARP

a broad spectrum of diversified health-related products and services, . . . to meet members'

---

beneficiaries of the Trust."  FAC ¶ 85; *see also Fudge v. Penthouse Int'l, Ltd.*, 840 F.2d 1012, 1015 (1st Cir. 1988) (considering a document not attached to the complaint where "[p]laintiffs unquestionably would have had to offer a copy of the [document] in order to prove their case").  Thus, the Declaration of Trust can be considered without converting this motion to a motion for summary judgment.  None of the other exhibits attached to the motion to dismiss need be considered.  *See* Defs.' Mot., Ex. 1, AARP Health Insurance Agreement, ECF No. 42-1; Defs.' Mot., Ex. 2, Advertisement 1, ECF No. 42-2; Defs.' Mot., Ex. 3, Advertisement 3, ECF No. 42-3.

[10]     Plaintiffs make no attempt to answer defendants' first argument, but the Declaration of Trust muddies defendants' neat characterization.  As defendants point out, the FAC alleges that AARP, Inc., the Trust's settlor, can "alter or dissolve" the Trust "at will," FAC ¶ 84, a marker of a revocable trust, *see* RESTATEMENT (THIRD) OF TRUSTS § 74 (2012).  If the Trust were revocable, then defendants may be correct that any fiduciary duties owed to beneficiaries would be owed to the settlor alone.  *See, e.g., id.* cmt e.  The Declaration of Trust, however, does not contain the language used in the FAC.  *See* Declaration of Trust, art. 12 (stating instead that the Trust may be terminated by agreement between AARP, Inc. and the trustees).  As to the defendants' second argument, plaintiffs' response is to suggest that, given the circumstances surrounding the Trust's creation and operation, the current defendants, and in particular AARP, Inc., are liable for the activities of the trustees.  *See* Pls.' Opp'n at 16. Resolution of that second argument may then turn on factual matters not in the record and inappropriate for resolution in the case's current procedural posture.

health-related social welfare needs, or for the general benefit, good, and welfare of AARP."

Declaration of Trust, art. 2(a).  Thus, the primary purpose of the Trust is *to assist AARP, Inc.*, the

Trust's settlor, in multiple endeavors.  Plaintiffs undoubtedly benefit from that assistance: one of

the purposes of the Trust is to assist AARP, Inc. in providing health products and services like

AARP Medigap.  Yet, the benefit plaintiffs receive is subsidiary to, and conveyed through, the

benefit conferred on AARP, Inc.

The case law confirms that such a benefit is incidental rather than beneficial.  Plaintiffs

cite *Jo Ann Howard & Associates, P.C. v. Cassity*, 868 F.3d 637 (8th Cir. 2017), to argue that

recipients "of a trust's 'services'" have a beneficial rather than an incidental interest, Pls.' Opp'n

at 14.  Plaintiffs misunderstand *Jo Ann Howard & Associates*' holding.  In that case, a company

that sold prepaid trusts for funeral services was indisputably a beneficiary of those trusts as "the

only entity entitled to receive distributions of trust income and principal in the ordinary course."

868 F.3d at 646.  From those distributions, the company was to reimburse the purchasers of the

prepaid trusts and their chosen funeral homes for any funeral expenses.  *Id.*  Plaintiffs here say

they are like the purchasers and the funeral homes, which *Jo Ann Howard & Associates*

concluded were also beneficiaries.  That conclusion, however, was not based on the purchasers'

and the funeral homes' receipt of the "trust's 'services.'"  Pls.' Opp'n at 14.  Rather, what

distinguished the purchasers and funeral homes from "mere incidental beneficiaries of the trust,"

*Jo Ann Howard & Associates*, 868 F.3d at 647, was a "guarantee," *id.* at 646, that, if the

company that sold the prepaid trusts failed to provide the promised reimbursements, "consumers

and funeral homes were entitled to a distribution directly from the trust in 'an amount equal to all

deposits made into the trust for the [preneed] contract,'" *id.* at 647 (alteration in original)

(quoting MO. REV. STAT. § 436.048).  In short, the consumers and funeral homes were

beneficiaries of the trust not because they benefited from the trust's services but because of their rights to distributions of trust property. By contrast, the Declaration of Trust contemplates that plaintiffs will receive "insurance proceeds" but expressly forbids distributions of trust property to member-insured. Declaration of Trust, art. 9(a) ("[N]o Member-Insured shall have the right or option to receive cash or other benefits instead of the insurance proceeds of the policy or certificate held by or payable to him or her, nor to receive any dividends payable in connection with such insurance, nor to receive any cash consideration in lieu of benefits, nor to receive any interest income or other proceeds other than the benefits provided by the master policy."). Unlike in *Jo Ann Howard & Associates*, then, no guarantees in the Declaration of Trust distinguish plaintiffs from "mere incidental beneficiaries of the trust." 868 F.3d at 647.

Plaintiffs are more like the plaintiffs in *Vargas-Colón v. Fundación Damas, Inc.*, 157 F. Supp. 3d 106 (D.P.R. 2016), *aff'd*, 864 F.3d 14 (1st Cir. 2017). There, medical malpractice claimants sued the trustees of an insurance trust "established for the purpose of paying medical malpractice claims against" a hospital. *Id.* at 115 (quoting the relevant Trust Deed). In *Vargas-Colón*, the trust beneficiaries, "based on the substance and structure of the Trust Deed," including the Deed's stated purpose of "paying medical malpractice claims," were those "accountable . . . for [the] malpractice claims," including the hospital. *Id.* Although the claimant-plaintiffs stood to obtain some benefits from the trust "by virtue of being medical malpractice claimants" against this hospital, the claimants' interest was incidental to the interest of the hospital. *Id.* This much was clear, *Vargas-Colón* explained, from the trust instrument, which "refers to no specific claimant but rather a malleable class of individuals that is subject to the ebb and flow of court proceedings and settlement agreements." *Id.* Similarly, here, although the member-insureds stand to obtain benefits as a result of the AARP Trust's role as group

policyholder, those benefits are incidental to the benefits AARP, Inc. gets from AARP Trust. While the Declaration of Trust states explicitly that its purpose is to help AARP, Inc. operate various programs, the Declaration of Trust discusses member-insureds as a class of individuals who may benefit from operation of those programs.  *See* Declaration of Trust, art. 9(a).  The indirect benefit plaintiffs receive from AARP Trust is incidental.

*     *     *

In short, the plaintiffs have not plausibly pled that AARP Trust owed them a fiduciary duty, so Count II of the complaint will be dismissed without prejudice as to AARP Trust.

## IV.   CONCLUSION

For the reasons stated, the defendants' Motion to Dismiss Count II of the Plaintiffs' First Amended Complaint is granted.  Count II of the FAC is dismissed without prejudice.  An appropriate Order accompanies this Memorandum Opinion.

Date:  May 6, 2020

_____
BERYL A. HOWELL
Chief Judge