# Ex. 102

# Plaintiffs' Statement of Additional Material Facts and Counter-Statement of Genuine Issues (Corrected) (Redacted)

## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

|  |  |
|---|---|
| HELEN KRUKAS and ANDREA KUSHIM, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>   v.<br><br>AARP, INC.; AARP SERVICES INC.; and AARP INSURANCE PLAN,<br><br>        Defendants. | Civil Action No. 1:18-cv-01124-BAH<br><br>Chief Judge Beryl A. Howell |

## PLAINTIFFS' CORRECTED STATEMENT OF ADDITIONAL MATERIAL FACTS AND PLAINTIFFS' COUNTER-STATEMENT OF GENUINE ISSUES

### Plaintiffs' Statement of Additional Material Facts[1]

**I.      Defendants' background:**

1.      With over 38 million members, AARP, Inc. ("AARP"), is the largest senior advocacy organization in the United States. Class Ex. 1, AARP, *Fact Sheet* at 1.[2] AARP publishes a magazine and newsletter for its members, purportedly lobbies on their behalf, and provides them with continuing-education programs, among other things. *Id.* at 2.

2.      AARP reported net income—revenues in excess of expenses—of $246,463,998 in 2018, representing a nearly quarter-billion-dollar surplus. Ex. A, AARP Inc., 2018 Form 990.[3]

3.      AARP Services Inc. ("ASI"), is a for-profit, taxable subsidiary of AARP, formed in 1999 in connection with AARP's settlement with the IRS, which had accused AARP of failing to pay business income taxes on many of its commercial activities. Expert Report of Gregory

---

[1] Note that Plaintiffs' Counter-Statement of Genuine Issues begins on p. 23, *infra*.
[2] Numerical exhibits attached to the Declaration of Jason S. Rathod in Support of Plaintiffs' Class-Certification Motion (ECF No. 59) are referred to herein as "Class Exs.".
[3] The lettered exhibits are attached to the Declaration of Jason S. Rathod in Opposition to Defendants' Motion for Summary Judgment.

Pinsonneault (Ex. B) ("Pinsonneault Rpt.") ¶ 106; Class Ex. 8., AARP_KRUKAS_0000685 at '686.

    4.    The Supplemental Health Insurance Program, or SHIP Program ("AARP Medigap" or "AARP Medigap plan" or "AARP Medigap program"), is an insurance program that provides coverage against losses that traditional Medicare alone doesn't cover. Pinsonneault Rpt. ¶ 17. AARP Medigap is underwritten by UnitedHealth Insurance Group ("United"). *Id*. at ¶¶ 23, 44. The relationships between and responsibilities of the AARP Medigap parties are outlined in the SHIP Program License and Quality Control Services Agreement (the "SHIP Agreement"). Class Ex. 32, AARP_KRUKAS_0047556.



    7.    Section 512 of the Internal Revenue Code exempts "all royalties" from a tax-exempt entity's income. 26 U.S.C. § 512(b)(2).

8.      AARP Insurance Plan ("AARP Trust" or "the Trust"), is a grantor trust that serves as the AARP Medigap plan's group policyholder.[4] Pinsonneault Rpt. ¶ 28. ███████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████

9.      The following chart illustrates the "royalty" payment dynamic (Class Ex. 48, at '045)



10.     Defendants are headquartered in D.C. Class Ex. 68, AARP Form 990, 2019, at 1 (supplying AARP's D.C. address); Class Ex. 69, AARP_KRUKAS_0000001 at '033 (supplying

---

[4] AARP, ASI, and the Trust are collectively referred to herein as "Defendants."

ASI's D.C. address); Class Ex. 70, AARP_KRUKAS_0008526 (describing that same address as

ASI's "National Office"); and Class Ex. 71, AARP_KRUKAS_0004143 at '145 (2012 trust

instrument noting that the AARP Trust was formed under D.C. law).

11.     AARP "devised its scheme" in D.C. Class Ex. 69, at '010 (noting that the default

location for ASI–United "CEO Summit meetings" would be D.C.); Class Ex. 72,

AARP_KRUKAS_0083285 at '285 (ASI board meetings held at its D.C. offices).

12. ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

13. ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████

14. ██████████████████████████████████

████████████████████████████████████████████

## II.     AARP endorses 3 Medicare products insured by United but licenses the same intellectual property pursuant to radically differing terms.

15.     AARP derives the greatest portion of its revenue from health-insurance products.

Ex. D, 2018 Consolidated Financial Statements, pp. 14–15 (in 2017, $649.2 million of AARP's

royalty revenue came from "health products and services"). If classified as an insurance

company, AARP would be one of the largest insurance companies in the country by total profit.

Ex. E, Behind the Veil: The AARP America Doesn't Know at p. 8.

(seniorsavingsnetwork.org/wp-

content/uploads/2019/01/AARP_REPORT_FINAL_PDF_3_29_11.pdf).

16.     In 2019, AARP had a net revenue margin nearly doubling that of the largest for-profit insurance companies. Class Ex. 68, AARP Form 990, 2019 (AARP had a roughly 10% net revenue margin); Ex. O, Fortune 500, 2019 (highest 2018 margin of the seven listed health insurers was 5.42%).

17.     ████████████████████████████████████████
██████████████████████████████████████████████████████
██.

18.     In addition to AARP Medigap, "the AARP-branded portfolio of Medicare products" includes two other insurance products: Medicare Advantage ("MA") and Part D. Ex. Q, AARP_KRUKAS_0146511 at '511; Pinsonneault Rpt. ¶¶ 17–21, 131. All three programs involve the same parties, ████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
██████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
██████████████████████████████████████

19.     The MA program is governed by the Amended and Restated Trademark License Agreement among AARP, ASI, and United ("MA Agreement"). Ex. S, AARP_KRUKAS_0174939. The Part D program is governed by the Program Trademark License Agreement ("Part D Agreement"), among the same parties. Ex. T, AARP_KRUKAS_0008844.

20. ████████████████████████████████████

████████████████████████████████████████████

████████████████" Ex. U, UNITED_KRU_0021659 at '670; Pinsonneault Rpt. ¶¶ 109–113.

████████████████████████████████████████████

██████████████████████████████████████████████████

████████ *Id.* In other words, ████████████████████████████

████████████████████████████████████ Ex. Q, at '511, '516; Pinsonneault

Rpt. ¶¶ 108–111.

21. ██████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████

22.     Defendants explicitly acknowledge that this ████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████ Pinsonneault Rpt. ¶¶ 111, 112; ████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

---

[5] ████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████

　　　█████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████████

███████████████████████████ Pinsonneault Rpt. ¶¶ 113, 114. ████████████

█████████████████████████████████████████████████

████████████████████████████████████████████ *Id.* at ¶ 47;

█████████████████████████████████

　　24.　　████████████████████████████████████████████. *Id.* at ¶¶ 46, 47.

　　25.█████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

██████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████████████████████

██████████Pinsonneault Rpt. ¶¶ 118, 120, 121.

26. ████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████ Pinsonneault Rpt. ¶ 45;

Class Ex. 32 at '604; Class Ex. 69, at '038.

27. ████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████████

Pinsonneault Rpt. ¶¶ 136–139.

28. ████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████ *Id.* at ¶¶ 57, 62, 64, 76. ████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████ *Id.* at ¶¶ 88, 89, 185).

29. ██████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████

30. ████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████ *Id.*

at ¶ 76.████████████████████████ *Id.* at ¶ 76.

31.     The combined rate paid under the MA and Part D plans are the best benchmarks

for what a true royalty would be for AARP Medigap███████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

███

32. ██████████████████████████████████████████

█████████ ███████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████████████

Deposition of Kevin Tator, Ex. Y (June 28, 2021), pp. 13, 30–31, 83; Pinsonneault Rpt. ¶ 90.

33. ███████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████

34. ███████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████

35.   ███████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████ *Id.* █████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████

36. █████████████████████████████████████████████

████████████████████████.

## III.    AARP promotes its reputation as a trusted advocate who will educate seniors about their health-insurance options and help them choose the "best" product.

37.    When it comes to choosing between Medicare-related health insurance programs (insurance products that are only available to, and particularly relevant to AARP's core advocacy demographic, seniors), AARP holds itself out as a uniquely trustworthy advocate, a source of unbiased healthcare advice, and an educational resource for its members. *See e.g.*, Class Ex. 2, AARP_KRUKAS_0029951 at slide 11 (AARP cultivates the image of a "trusted 'curator'" that [will] guide its members[']" health-insurance choices); *id.* at slide 57 (a "trusted 'short-cut,'" "counsel[or]," and "advisor" to its members regarding their health-insurance choices); Class Ex.

████████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████

38. ███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
██████████████████████████████████████
████████████████████████████████████████
███████████████████████████████████████
████████████████████████████████

39. ██████████████████████████████████
█████████████████████████████████
███████████████████████████████████████
███████████████████████████████
████████████████████████████████████████
████████████████████████████████████
█████████████████████████████████████████
███████████████████████████████████████
██████████████████████████████████████
███████████████████████████████████████
█████████████████████████████████████
███████████████████████████████████████
██████████████████████████████████████
████████████████████████████
████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

**IV.     Defendants encourage their members to purchase AARP Medigap.**

40. ████████████████████████████████████████████

41. ████████████████████████████████████████████████

████████████████████████████████████████████████████

42. ████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

43. ████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████

44. ████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████ Pinsonneault

Rpt. ¶¶ 203, 204. ███████████████████████████████

█████████████████████████████████████████████

    45. ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████

    46. ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████

███████████████████████████████████████

██████████████████████████████████████

47.   ███████████████████████████████

███████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████

███████████████████████████████████████

█████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████

███████

48.  ████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████

50. ████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████

██████ ).

51. ████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████

52. ██████████████████████████████████████ Ex.

WW, AARP_KRUKAS_0008874 at '885; Pinsonneault Rpt. ¶¶ 205, 206. The only █████

███████████████████████████████████████████

███████████████████████████████ *Id.*

53. ████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████

54. ████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

███ .

55. ████████████████████████████████████

████████████████████████████████████████████



██████████████████████████████████

████████████████████████

56.    ████████████████████████████████████

████████████████████████

57.████████████████████████████████████

█████████████████████████████████████████

██████████ Class Ex. 5, AARP_KRUKAS_0093834 at '858; Armstrong Dep. 136:3–137:11.

58.████████████████████████████████████

██████████████████████████████████

██████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████

████████████████████████

59.    The additional activities that ASI undertakes in connection with AARP Medigap, ████████████████████████████████████████████ go beyond quality control of AARP's brand and intellectual property (Pinsonneault Rpt. ¶¶ 200–216); and constitute solicitation (Blanchard Rpt. ¶¶ 36–37).

60.    The primary AARP Medigap website–www.aarpmedicaresupplement.com–positions AARP (and the AARP brand) in the forefront as the trusted entity offering Medigap

coverage to its members. No other Medigap insurers are identified on that website. The website explicitly states, "This is a solicitation of insurance." Blanchard Rpt. ¶ 51.

61.    This constitutes a solicitation of insurance by AARP, regardless of whether AARP or United owns the website URL or whether United licenses the site name from AARP. *Id*. The use of the AARP name in the URL, the prevalence of references throughout the page to AARP, the ability to obtain or renew AARP membership information through the site, and the discussion of AARP's endorsement all convey the message that AARP is urging consumers to purchase AARP Medigap. *Id*. at ¶ 52.

62.    The AARP Medigap insurance website (www.aarpmedicaresupplement.com) does not present information about any insurer other than United. *Id.* This drives AARP's members to purchase AARP-branded Medigap insurance from United. *Id*.; ███████

████████████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████.

63.    Another AARP website (aarpadvantage.com, which currently directs users to aarp.org), provides general information about AARP benefits and is also used as a mechanism to drive leads for AARP Medigap. When users select "more information" about Medigap, they are sent, as a sales lead, to United. *Id*. at ¶ 54; ██████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████

64.    ████████████████████████████████████████████

██████████

65.     AARP's online marketing activities for Medigap insurance are similar to other lead generation websites that are licensed producers and collect a commission for their services. *Id.* at ¶¶ 44–50.

66.     , a fee collected monthly by AARP from the premiums paid by the members on new and renewed policies constitutes a sales commission in valuable consideration of the solicitation and sale of insurance. *Id.* at ¶ 39. ██████████████████████

██████████████████████████████

██████████████████████████████

█████████████████████

## V.     AARP's Medigap disclosures:

67.     Defendants' standard, uniform disclosure, which appears on all consumer-facing communications regarding the AARP Medigap plan, states: "UnitedHealthcare Insurance Company pays royalty fees to AARP for the use of its intellectual property. These fees are used for the general purposes of AARP. AARP and its affiliates are not insurers." Gomez Dec. ¶ 14.

68.     UnitedHealthcare Insurance Company does not pay the Medigap "royalty fee." Instead, the member-policyholder pays the fee out of their member contributions. Class Ex. 48, at '045; Blanchard Rpt. ¶¶ 33, 41; Pinsonneault Rpt. ¶ 130.

69.     The amount collected is a commission ████████████████ ██████████████████████████████

█████████████████

70.     Defendants' disclosure that "UnitedHealthcare Insurance Company pays royalty fees to AARP for the use of its intellectual property," does not reveal that member-policyholders

are paying the AARP Medigap "royalty" fee as 4.95% of their payments; or that it is being paid for more than intellectual property licensing. Gomez Dec. ¶ 14.

## VI.    Plaintiffs' experience with AARP Medigap:

71.     Plaintiffs Krukas and Kushim each testified that they trusted AARP to advocate on behalf of seniors like them. Class Ex. 60, Krukas Tr. 130:17–21 (In response to the question, "But you don't know whether there was a better avenue or not; do you?," Ms. Krukas responded, "that's precisely the point."); Class Ex. 61, Kushim Tr. 49:18–23; 52:25–53:12; 61:4–15; 73:1–3.

72.     Plaintiffs Krukas and Kushim each testified that they read Defendants' disclosure in connection with their AARP Medigap purchases and it did not alert them to the fact that AARP had a vested financial interest that went beyond a traditional royalty that UnitedHealth would pay to AARP at a corporate level or that they, and not United, would pay AARP. Ms. Krukas testified that such information would have been important to her purchasing decision. *See* Class Ex. 60, Krukas Tr. at 53:24–54:17 and 67:12–68:12 (noting that she probably skimmed the disclosure because that is her practice, but assumed that it didn't apply to her, and noting that the disclosure was misleading because, "[I]f people knew that they were getting a commission they might have looked elsewhere, which I would have done."). Ms. Kushim testified similarly. Class Ex. 61, Kushim Tr. 57:16–58:5, 62:15–23 (recalling seeing the disclosure and testifying that it was misleading because, "You forgot the next sentence that says by the way, we take five percent," and that, if there was such a disclosure, it would have given her "something I want to compare to somebody else").

## **Plaintiffs' Counter-Statement of Genuine Issues:**

1.      "Defendant AARP, Inc. ("AARP") is a 501(c)(4) nonprofit, social-welfare,

membership organization that advocates for Americans over the age of 50. Declaration of John

Larew in Support of Defendants' Memorandum in Opposition to Class Certification (ECF No.

69) ("Larew Decl.") ¶ 2."

**Disputed in part.** Plaintiffs do not contest that AARP is a 501(c)(4) nonprofit and holds

itself out as social-welfare, membership organization that advocates for Americans over the age

of 50. Plaintiffs do not dispute that at times AARP adheres to this mission such as when it filed

an amicus brief criticizing kickbacks and referral arrangements in the housing industry because

they cause price increases for seniors. *See PHH Corp., et al. v. Consumer Financial Protection*

*Bureau*, Case No. 15-1177 (D.C. Cir.) (Dkt. # 1668978). However, here, ███████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

Indeed, based on income, AARP would be one of the largest insurance companies in the United

States; and AARP's "royalty income" dwarfs the income derived from membership dues. *See*

*Behind the Veil: The AARP America Doesn't Know*, Mar. 29, 2011, at 8,

https://seniorsavingsnetwork.org/wp-

---

[6] Lettered Exhibits are to the Rathod Declaration filed in Opposition to Defendants' Motion for
Summary Judgment.  Exhibits 1–67 can be found at ECF 59 (Plaintiffs' Motion for Class
Certification).  Exhibits 68-79 can be found at ECF 84 (Plaintiffs' Reply Brief in Support of
Class Certification).  The Declaration of Gregory Pinsonneault In Support Of Plaintiffs' Motion
for Class Certification can be found at ECF 58-1. The Declaration of Holly Blanchard in Support
of Class Certification can be found at ECF 58-2 and their Reply declarations can be found at
ECF 84-1 and 84-2, respectively.

content/uploads/2019/01/AARP_REPORT_FINAL_PDF_3_29_11.pdf ; *id*. at 7; *see* Plaintiffs'

Statement of Additional Material Facts (hereinafter referred to as "SOMF") ¶¶ 46–48, *supra*.

2.     "AARP seeks to ensure that high-quality healthcare options are available to its

members. *Id*."

**Disputed**. *See* ¶ 1, *supra*.

3. ████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

██████████████████████████████████████

████████████████████

**Disputed.** To the degree Defendants are implying that the "royalty" revenue *only* goes

towards ████████████████████ this is denied. Much of that revenue goes towards other

things, such as paying executive salaries and marketing expenses. *See* Ex. E, *Behind the Veil:*

*The AARP America Doesn't Know*, Mar. 29, 2011, at 23, https://seniorssavingsnetwork.org/wp-

content/uploads/2019/01/AARP_REPORT_FINAL_PDF_3_29_11.pdf; Ex. 49,

AARP_KRUKAS_0046633 at '633; Ex. 50, AARP_KRUKAS_0160442, at '553. For additional

analysis, *see* SOMF ¶¶ 2, 3, 15–17, *supra*.

4.     **Admitted.**

5.     **Admitted.**

6.     **Admitted.**

7.     "United Healthcare Insurance Company is based in Connecticut. United offers

Medigap coverage to AARP members across the nation in all 50 states, four territories, and the

District of Columbia. *Id*.; Declaration of Sarah Michener in Support of Defendants' Opposition

to Plaintiffs' Motion for Class Certification (ECF No. 71) ("Michener Decl.") ¶ 3; *see also* Declaration of Alec W. Farr in Support of Defendants' Motion for Summary Judgment ("Farr MSJ Decl.") Ex. 1."

**Disputed in part.** United does not offer Medigap alone but does so in collaboration with Defendants. *See* ███████████████████████████████

8. ██████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████

**Disputed.** United does not pay the royalty to AARP, class members do. *See* SOMF ¶¶ 8–9, 14, 33, 68, *supra*, citing Class. Ex. 48 (AARP_KRUKAS_0018026 at '045); ████████

████████████████████████████████████████

████████; Ex. B, Expert Report of Gregory Pinsonneault (hereinafter "Pinsonneault Rpt.") ¶ 130; Ex. Z, Expert Report of Holly Blanchard (hereinafter "Blanchard Rpt.") Rpt. ¶¶ 34, 39.

Defendants also mischaracterize John Larew's testimony. ███████████████████

█████████████████████████████████████████████

████████████████████████████.

9. ████████████████████████████████████████

████████████████████████████████████

████████████████████████████

**Disputed.** First, United does not pay the "royalty." *See* ¶ 8, *supra*. The royalty is contingent on activity by Defendants, including the solicitation activities Defendants engage in

████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████

Additionally, the "royalty" payment is not in consideration of AARP's licensing of its intellectual property, but rather, in consideration of Defendants' active solicitation efforts (i.e., ████████████████████████████████ *See* Pinsonneault Rpt. ¶¶ 200–215; Blanchard Rpt. ¶¶ 36–43. This is one of the reasons the payment is more properly characterized as a commission (i.e., ███████████████████████████████████ ████████████████████). Blanchard Rpt. ¶¶ 36–43.

| ███████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

███████████████████████████████████████████████████████.

Pinsonneault Rep ¶¶ 130-186. █████████████████████████████

██████████████████████████████████████████████████████ *see also* SOMF ¶¶ 20–22. ███████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████ amounting to ████████

████ of program revenues.

For additional factual evidence rebutting Defendants' statement, *see* SOMF ¶¶ 15–36, 40–66, *supra*.

10. ██████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████ "

**Disputed.** Defendants have not established that their Medigap policies ██████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████

11. ██████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████

   **Disputed.** ████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████

   ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

   12.████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████

   **Disputed**████████████████████████████████████████████████████

██████████████████████████████████████████████████████

   ████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████

For additional factual evidence rebutting Defendants' statement, *see* SOMF ¶71

   13.████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

**Disputed.** *See* Plaintiffs' response to ¶ 10, *supra*. .

14. ███████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████"

**<u>Disputed</u>.** ███████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████

In practice, Defendants act as insurance producers by urging AARP members to buy

Medigap policies. Blanchard Rpt. ¶¶ 36–39, 43, 45–56. ████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████

Defendants generate revenue  by marketing that AARP is acting in their best interest. ██

███████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████

Significantly, Defendants have taken control over most of these insurance producer responsibilities █████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████

Finally, Defendants mischaracterize the deposition testimony of Plaintiffs' expert, Holly Blanchard. Ms. Blanchard *did not* testify that Defendants are not engaged in the solicitation and sale of insurance. Rather, the portions of her testimony cited by Defendants state various uncontroversial and obvious facts, such as the fact that *oversight* is a different thing than *solicitation* (Blanchard Dep. 153:18–25); that merely exercising quality control over brand usage does not render an organization an insurance producer, "in and of itself" (*id.* at 165:9–16); and that "AARP Trust, as a separate entity, doesn't need a license (*id.* at 167:13–16).

For additional factual evidence rebutting Defendants' statement, *see* SOMF ¶¶ 40–66, *supra*.

15.   ██████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████

**Disputed**. United does *not* ██████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████ fact that United obtains regulatory approval for policy certificates is entirely immaterial to this case. *See* ¶ 44, *infra*.

For additional factual evidence rebutting Defendants' statement, *see* SOMF ¶¶ 40–70, *supra* .

16.██████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████

**Disputed in part.** ████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

██████████████████████████████████████████████ Regulators receive no communications from United about how the marketing materials were created or who created them. This means regulators have no way of knowing whether the solicitations run afoul of insurance licensing regulations. Blanchard Rpt. ¶¶ 63, 65, 69.

For additional factual evidence rebutting Defendants' statement, *see* SOMF ¶¶ 40–70, *supra*.

17.     "United applies the AARP marks to virtually all program materials and uses the member data obtained from AARP to identify AARP members for direct mail and other advertising efforts. Declaration of Neal Heyman in Support of Defendants' Opposition to Plaintiffs' Motion for Class Certification (ECF No. 72) ("Heyman Decl.") ¶ 14; Larew Decl. ¶ 11."

**Disputed.** ███████████████████████████████████████████

████████████████████████████████████████████ Moreover, Defendants' statement suggests that AARP passively provides United with membership data as part of the licensing agreement and then United takes over from there, making all the decisions about which members to target, and when and how to target them. This is false. In fact, Defendants are intimately involved in developing these marketing strategies and direct every aspect of solicitation spending and  strategy, deciding which members to target, as well as when to target them, and how to target them████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████

█████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████

███████████████████████████████████████████

████████████

Again, the notion that United directs solicitation efforts, with Defendants taking a passive

role, is false. ███████████████████████████████

██████████████████████████████████████████

█████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████

████████████████████████████████████████████

████████████████████████████

For additional factual evidence rebutting Defendants' statement, *see* SOMF ¶¶ 40–70,

*supra*.

18.     "In contrast, Defendants engage in none of these activities and perform distinctly

different roles. ████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████

**Disputed.** Defendants engage in many of "these [advertising] activities" (*see* ¶¶ 14–17, *supra*).

████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████

For additional factual evidence rebutting Defendants' statement, *see* SOMF ¶¶ 8–9, 22–23, 33, 40–70, *supra.*

19. ████████████████████████████████████

██████████████████████████

**Disputed in part.** ████████████████████████████████████

██████████████████████████████████████████

█████████ ███████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

        ███████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████████████████████████████ *Id*. at ¶¶ 10–15. But

importantly, ██████████████████████████████████████████████

███████ ███ ████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████ Ex. Z, Blanchard Rpt. ¶¶ 30–39.

        For additional factual evidence rebutting Defendants' statement, *see* SOMF ¶¶ 35–70,

*supra.*

20.     "The establishment of such taxable subsidiaries is customary for non-profits that license their intellectual property. Section 512 of the Internal Revenue Code exempts from a tax exempt entity's income "all royalties [. . .] whether measured by production or by gross or taxable income from the property," but the services associated with policing the marks and quality control of the brand are regarded as for-profit work that is subject to taxation. 26 U.S.C. § 512(b)(2). Conventional tax advice counsels the establishment of a taxable subsidiary, such as ASI, to perform those functions and to pay federal tax on their income. *See* John V. Woodhull & Erica D. Reiderbach, Taxable Subsidiaries of Tax-Exempt Organizations, Taxation of Exempts (formerly Journal of Taxation of Exempt Organization) (Jan./Feb. 2014) at 19."

**Disputed.** ASI's activities go far beyond the work performed by "conventional" tax-exempt subsidiaries. *See* ¶¶ 14–17, 19, *supra*.

Further, the "royalty" collected by AARP is, in fact, a commission earned ███████████ ██████████████████████████████████████ Blanchard Decl. (ECF No. 58-2) ¶¶ 33–38.

For additional factual evidence rebutting Defendants' statement, *see* SOMF ¶¶ 40–70, *supra*.

21.     ████████████████████████████████████████ ███████████████████████████████████████ █████████████████████████████████████████ ████████████████████████████████████████ ███████████████████████

**Disputed in part.** As discussed *supra*, this is misleading to the extent Defendants are suggesting that either 1) ASI limits its ███████████ efforts to those seeking to protect the

AARP brand and ensure quality products (it does not) (*see* ¶¶ 14–17, 19, *supra*); ███████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

     22.     "For its part, AARP licenses its intellectual property and in exchange receives

royalty payments from ███████████████████████████████

     **Disputed.** *See generally*, Pinsonneault Rpt. The "royalty" payment is not made in

exchange for the licensing of AARP's intellectual property, but rather, in exchange for AARP's

active endorsement, solicitation and sales of AARP Medigap. Blanchard Decl. (ECF No. 58-2)

¶¶ 33–38; Pinsonneault Reply (ECF No. 84-1) ¶¶ 7–19; *see also* ¶¶ 14–17, 19, *supra*. This is

evidenced not only by the ███████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████ (*see generally*, Pinsonneault Rpt.), █

███████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████

     For additional factual evidence rebutting Defendants' statement, *see* SOMF ¶¶ 8–36,

*supra*.

23. ██████████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████████████████████

**Disputed in part.** This is denied to the extent Defendants are suggesting that ASI only

performs genuine ████████████████████ as opposed to solicitation activities. *See* ¶ 14–17,

19, 22, *supra.* █████████████████████████████████████████

███████████████████████████████████

24.███████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

█████████████████████████████████████████████████

**Disputed in part.** ASI does far more ████████████████████████████████

█████████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████████████

██████████████████████████████████████

25.██████████████████████████████████████████████

United pays a royalty to AARP. Larew Decl. ¶ 10."

**Disputed.** *See* generally, Ex. B, Pinsonneault Rpt. United does not pay the "royalty" to

AARP, but rather, it is the member-policyholder that pays the "royalty," ████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████

With respect to the other two AARP-endorsed, United insurance products (i.e., the MA

and Part D plans), ████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████ *Id.* ████████████████████████████████████

██████████████████████████████████████ *See* SOMF ¶¶ 28, 29.

For additional factual evidence rebutting Defendants' statement, *see* SOMF ¶¶ 8–36,

*supra.*

26. ████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████

**Disputed.** *See* generally, Ex. B, Pinsonneault Rpt. The payment is not correctly

characterized as a "royalty." *See* Pinsonneault Decl. (ECF No. 58-1) at Pgs. 34–37; Pinsonneault

Reply (ECF No. 84-1) at Pgs. 2–9; Blanchard Decl. (ECF No. 58-2) at Pgs. 6–9). And it is not

United that pays AARP, but rather the member-policyholders themselves (Blanchard Decl. at ¶

31; Class Ex. 48 at '045. *See also* ¶ 25, *supra.* When United ████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

For additional factual evidence rebutting Defendants' statement, *see* SOMF ¶¶ 8–36,

*supra.*

27. ████████████████████████████████████

████████████████████████████████████████

███████████████████████

**Disputed.** *See* ¶ 25, 26, *supra*. ████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████  ▔▔

████e ██████████████████████████████████████

██████

28.█ ██████████████████████████████████████

████████████████████████████████

**Disputed.** *See* ¶¶ 25–27, *supra*.

29. ██████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████

**Disputed.** ████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████

For additional factual evidence rebutting Defendants' statement, *see* SOMF ¶¶ 15–36, *supra*.

30.  ██████████████████████████████████████████

**Disputed**. *See* ¶¶ 25–29, *supra*. ████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

███████████████████████████████████████████

For additional factual evidence rebutting Defendants' statement, *see* SOMF ¶¶ 15–36, *supra*.

31.  ██████████████████████████████████████████████

██████████████████████████████

**Disputed**. *See* ¶¶ 25–30, *supra*. ██████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

███████████████████████████

For additional factual evidence rebutting Defendants' statement, *see* SOMF ¶¶ 15–36, *supra*.

32. █████████████████████████████████████████

▮▮▮▮▮▮▮▮▮

**Disputed.** *See* ¶¶ 25–31, *supra*.

For additional factual evidence rebutting Defendants' statement, *see* SOMF ¶¶ 15–36, *supra*.

33.    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮"

**Disputed.** *See* ¶¶ 14-17, 19, 25-32 *supra*.. For additional factual evidence rebutting Defendants' statement.

For additional factual evidence rebutting Defendants' statement, *see* SOMF ¶¶ 40–66, *supra*.

34.    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

**Disputed.** *See* ¶ 18, *supra*; ¶ 40, *infra*. The policy is negotiated by the parties and reflects the desires of the parties. Even if ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ does not make the challenged conduct immune from scrutiny. Ex. Z, Blanchard Rpt. ¶¶ 39–42, 64–69.

35.    "Plaintiffs' expert has conceded that AARP Trust's and ASI's collection of premium payments as group policyholder on United's behalf and payment of the royalty to AARP at United's direction does not require an insurance license. *See* Blanchard Dep. 167:8–17."

**Disputed.** Defendants misconstrue Holly Blanchard's testimony. *See* ¶ 14, *supra*; Blanchard Dep. 153:18–25; 165:9–16; 167:13–16.

Moreover, the collection of the "royalty" *does require* an insurance license because it is not really a royalty at all, it is a commission. Blanchard Rpt. at ¶¶ 36–39.

36.     "While federal law specifies the standardized benefits that insurers must offer in their Medigap plans, *see* 42 U.S.C. § 1395ss(p), United provides Medigap insurance against the backdrop of comprehensive state regulatory schemes that independently govern the terms of United's insurance contracts with insureds in each of the 55 jurisdictions where United offers its AARP-branded Medigap insurance. *See* Gomez Decl. ¶ 3; Michener Decl. ¶ 4; see also 42 U.S.C. § 1395ss; SHIP Agreement § 4.3.1."

**Disputed.** *See* ¶ 36, supra; ¶ 40, *infra*. Preliminarily, this statement "liberally mixes facts with argument," which "does nothing to assist the court in isolating the material facts, distinguishing disputed from undisputed facts, and identifying the pertinent parts of the record." *Robertson v. Am. Airlines*, 239 F. Supp. 2d 5, 9 (D.D.C. 2002). Moreover, the "comprehensive regulatory schemes" referred to by Defendants do *not* govern the conduct at issue in this case, namely, whether Defendants, none of whom are regulated entities, are acting as insurance producers and soliciting insurance. Blanchard Rpt. ¶¶ 63–70. This case does not challenge the setting or reasonableness of the Medigap insurance rates; and no claims have been brought against United (the regulated entity responsible for filing those rates), who would not be liable for any damages Plaintiffs seek. Nor do Plaintiffs challenge the terms and conditions of service between United and its policyholders. Because Defendants are not licensed insurers, they are not subject to the relevant regulatory regime. *Id.*

37.     "Every state and territory has its own independent agency that oversees Medigap insurance. Gomez Decl. ¶ 3."

**Disputed.** *See* ¶ 36, supra; ¶ 40, *infra*.

38.     "The regulators in Plaintiffs' home states are the Florida Office of Insurance Regulation ("FLOIR"), the Louisiana Department of Insurance ("LDI"), and the Michigan Department of Insurance and Financial Services ("MIDIFS"). See, e.g., Gomez Decl. Exs. D (ECF No. 70-4), E (ECF No. 70-5), and F (ECF No. 70-6)."

**Disputed.** *See* ¶ 36, supra; ¶ 40, *infra.*

39.     "Each state regulator ultimately determines the rates United must charge for coverage, and the marketing United is permitted to use to solicit and sell enrollments in that state or territory. See, e.g., Fla. Stat. § 627.6743 (Florida); Mich. Comp. Laws § 500.3835 (Michigan); La. Admin. Code tit. 37, § 575 (Louisiana); see also Gomez Decl. ¶ 3; Michener Decl. ¶ 4."

**Disputed.** *See* ¶ 36. Though United may file the solicitation materials submitted by United, they are not privy to *what organization created (or directed and supervised the creation of) those materials.* Blanchard Rpt. ¶¶ 63, 67. Regulators require transparency in selling, soliciting and negotiation of insurance products. As non-licensed entities Defendants have not been subject to regulatory jurisdiction and oversight and there is no transparency with regulators in the filings There would be no way for the insurance regulators in D.C. to know that AARP is being compensated ███████████████████████████████████████████

███████████████████████████████████████████████████████████

███████The materials presented to regulators lack transparency because they do not disclose Defendants' true financial incentive in the sale of the product. Blanchard Rpt. ¶ 69. If regulators were fully aware of the business relationship between Defendants and United, and the fact that the "royalties" received by AARP as compensation ███████████████████████ that would greatly alarm the regulators. The regulators would mandate further disclosure and/or require AARP to become a licensed insurer. *Id.* at ¶ 71.

40.    "Each state also separately regulates insurance solicitation and licensing. *See* Gomez Decl. ¶ 3; Falcone Decl. ¶¶ 4, 10–13; see also D.C. Code Ann. § 31-1131.03; Fla. Stat. §§ 626.112, 626.8734; La. Rev. Stat. §§ 22:12, 22:1698; Mich. Comp. Laws § 500.1206a."

**Disputed.**   Preliminarily, this statement "liberally mixes facts with argument," which "does nothing to assist the court in isolating the material facts, distinguishing disputed from undisputed facts, and identifying the pertinent parts of the record." *Robertson v. Am. Airlines*, 239 F. Supp. 2d 5, 9 (D.D.C. 2002). Filing solicitation materials with the state does not immunize those materials from judicial scrutiny.  Blanchard Report ¶¶ 64-69. The misleading disclosures challenged in this case, which are provided on all AARP Medigap solicitations and general informational sources (whether filed with the relevant insurance regulator or not), emanate from AARP,  an unregulated entity that creates, approves, authorizes and disseminates the false royalty disclosures from its headquarters in D.C.

For additional factual evidence rebutting Defendants' statement, *see* SOMF ¶¶ 10–40, *supra*.

41.    ███████████████████████████United annually proposes to FLOIR, LDI, MIDIFS, and every other state department of insurance a specific rate for each Medigap plan United offers in the state. SHIP Agreement § 4.3.1; Michener Decl. ¶ 4."

**Disputed and immaterial.** ███████████████████████████

███████████████████████████████████████

███████████████████████████████████

███████████████████████████████

Although this is yet another piece of evidence supporting the fact that Defendants have adopted the role of an insurance producer vis-à-vis the AARP Medigap plan, this case does not challenge

the setting or reasonableness of the Medigap insurance rates; and no claims have been brought

against United (the regulated entity responsible for filing those rates), who would not be liable

for any damages Plaintiffs seek. *See* ¶ 36, 40, *supra.*

42.  ███████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████

████████████████████████████████

**Disputed and immaterial**. *See* ¶¶ 36, 40, 41, *supra.*

43.  "███████████████████████████████████

██████████████████████

**Disputed and immaterial.** Defendants have not properly supported the assertion that

█████████████████████" particularly given the ample evidence that United's rates are often

*higher* than those of its competitors. *See* ¶ 10, *supra.* In any event, Plaintiffs do not challenge the

setting or reasonableness of the Medigap insurance rates; and no claims have been brought

against United; Defendants assertion is, therefore, immaterial. *See* ¶¶ 36, 41, *supra.*

44.  "FLOIR, LDI, and MIDIFS each review every overall rate to ensure it is

reasonable in relation to the benefits provided, meets applicable loss ratio standards, and is not

excessive, inadequate, or unfairly discriminatory. Id. ¶ 6."

**Disputed and immaterial.** This case does not challenge the setting or reasonableness of

the Medigap insurance rates; and no claims have been brought against United (the regulated

entity responsible for filing those rates), who would not be liable for any damages Plaintiffs seek.

Nor do Plaintiffs challenge the terms and conditions of service between United and its policyholders. *See* ¶¶ 36, 40, 41, *supra*.

45.     "The proposed Medigap rate schedules must comply with statutory "loss ratios," which generally require insurers to spend at least 75% of premium revenue on benefits for group policies; United may devote the remaining non-benefit premium revenue to program expenses and profit as it chooses. Id.; see also, e.g., Mich. Comp. Laws § 500.3855; La. Admin Code. Tit. 37, § 545; Fla. Stat. § 627.6745."

**Disputed and immaterial.** *See* Plaintiffs' response to ¶ 36, 40, 41, 44, *supra*.

46.     "Each state, including Florida, Louisiana, and Michigan, requires that Medigap insurers such as United charge insureds only and exactly the premiums approved by each jurisdiction's respective regulatory authority. See, e.g., Mich. Comp. Laws § 500.3849(3); Fla. Stat. §§ 627.062, 627.674; La. Rev. Stat. §§ 972, 1111."

**Disputed and immaterial.** *See Id.*

47.     "In reviewing proposed rates, each regulator examines each plan's historical and projected claims experience within its jurisdiction and approves rates only if the data indicate that insureds are receiving sufficient benefits from their premiums. Michener Decl. ¶¶ 6–8. Because each regulator analyzes each plan's retrospective claims experience, its ratemaking in any given year depends upon the approved rates and claims experience for preceding years. *Id.*"

**Disputed and immaterial.** *See id.*

48.     "For all relevant years, FLOIR, LDI, and MIDIFS have approved premium rates filed by United. Declaration of Gregory S. Moyer in Support of Defendants' Opposition to Plaintiffs' Motion for Class Certification (ECF No. 74) ("Moyer Decl.") Exs. A–K (ECF Nos. 74-1 to 74-11)."

**Disputed and immaterial.** *See id.*

49.     "United may charge an insured in Florida, Louisiana, and Michigan only and exactly the premium rates approved by FLOIR, LDI, and MIDIFS, respectively. If a carrier does not meet the minimum loss ratio in a given year, state law may require the carrier to refund excess premium to insureds, to ensure that at least 75% of premiums are used to cover claims (and, correspondingly, that no more than 25% of revenue be applied towards anything other than claims). Refunds of regulator-approved premiums are permitted only in limited circumstances defined by each state. Michener Decl. ¶ 7."

**Disputed and immaterial.** *See id.*

50.     "At all relevant times, United's rates have satisfied medical-loss requirements. . *Id.*; Moyer Decl. ¶¶ 7–17, 21–22, Exs. A–M (ECF Nos. 74-1 to 74-13)."

**Disputed and immaterial.** *See id.*

51.     "United competes in a marketplace with a variety of other insurers and has grown to be the largest Medigap provider nationwide. Michener Decl. ¶¶ 11, 13, 15, 21."

**Disputed.** *See* ¶ 10, 43, *supra.*

52.     "State law also explicitly governs how insurers like United may advertise Medigap plans. FLOIR, LDI, and MIDIFS (like all other jurisdictions) require that all Medigap advertising and certain other materials used with prospective insureds, such as enrollment applications, be filed for regulatory review prior to use. Gomez Decl. ¶ 6."

**Disputed and immaterial.** *See* ¶¶ 40, 61, *supra.* Moreover, this statement "liberally mixes facts with argument," which "does nothing to assist the court in isolating the material facts, distinguishing disputed from undisputed facts, and identifying the pertinent parts of the record." *Robertson v. Am. Airlines*, 239 F. Supp. 2d 5, 9 (D.D.C. 2002).

53.     "FLDOI and LDI require prior approval of marketing materials before they may be used. Gomez Decl. ¶ 6, Ex. B (ECF No. 70-2). MIDIFS allows insurers to begin using filed marketing materials 30 days after filing and enrollment materials 45 days after filing, regardless whether MIDIFS has approved the materials, but United nevertheless waits for formal feedback from MIDIFS before using filed marketing and enrollment materials. *Id*."

**<u>Disputed and immaterial</u>.** *See id.*

54.     "While each department of insurance ensures advertising material is not materially misleading, each state applies individualized requirements to its review of submitted advertisements. United updates advertisements in response to regulator's comments. Gomez Decl. ¶ 9."

**<u>Disputed and immaterial</u>.** *See id.*

55.     "United carries out its exclusive responsibility for marketing its Medigap program through various channels: United sends direct mailings to AARP members; runs television advertisements; publishes advertisements in print media (including *AARP The Magazine*); purchases online advertisements, including marketing material placed on AARP websites; and operates its own websites, such as aarpmedicaresupplement.com. Heyman Decl. ¶¶ 2, 5; Gomez Decl. ¶ 17."

**<u>Disputed</u>.** United does not carry the "exclusive responsibility" for marketing the Medigap program. *See* ¶¶ 14–17, 19, *supra*.

For additional factual evidence rebutting Defendants' statement, *see* SOMF ¶¶ 40–70, *supra*.

56. ██████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████

**Disputed.** *See* ¶¶ 14–17, 19, *supra*. To the degree this statement suggests ████████████

██████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████

      ████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████

Further, ████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████████████████████

      ████████████████████████████████████████

*supra.*

57.      "Virtually all United program materials make extensive use of AARP's intellectual property. Heyman Decl. ¶¶ 2, 14."

**Disputed.** *See* ¶¶ 14–17, 19, *supra*. Again, it is inaccurate to refer to Medigap marketing materials as "United program materials," in that they are owned by AARP and created with granular input by, direction from, and approval of ASI. Class Ex. 11 at '711.

For additional factual evidence rebutting Defendants' statement, *see* SOMF ¶¶ 40–70, *supra*.

58. ███████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████

**Disputed and immaterial.** *See* ¶¶ 40, 61, *supra*. For additional factual evidence rebutting Defendants' statement, *see* SOMF ¶¶ 40–70, *supra*.

59. █████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████████████
████████████████████

**Disputed and immaterial.** *Id.* For additional factual evidence rebutting Defendants' statement, *see* SOMF ¶¶ 40–70, *supra*.

60. **Admitted.**

61. ████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████████████
███████████████████████████████████████████████

██████████████████████████████████████

████████████████████████

**Disputed and immaterial.** *See* ¶ 40, *supra*. Defendants, and not UnitedHealth, are responsible for AARP's communications to its members. Moreover, Defendants' use of its website to generate leads for UnitedHealth (and no other Medigap carrier) and convert those leads into AARP Medigap sales constitutes solicitation and sale of insurance without proper licensing. Ex. Z, Blanchard Rpt. ¶¶ 54–55.

For additional factual evidence rebutting Defendants' statement, *see* SOMF ¶¶ 40–70, *supra*.

62.    "Florida law expressly provides that associations like AARP need not be licensed to familiarize members with the availability of member-benefit programs, *see* e.g., Fla. Admin. Code Ann. r. 69O-156.103 (term "advertisement" does not include "[a] general announcement from a group or blanket policyholder to eligible individuals on an employment or membership list which may include a brief description of coverage and is primarily a notification that a contract or program has been written or arranged"), and Michigan law reaches the same result through implication, see Mich. Comp. Laws §§ 500.1202(2)(b)(i), (2)(e) (Michigan insurance producer license not required to secure and furnish information about group health insurance, or for activities limited to advertising without intent to solicit). Indeed, all states regard the provision of "general information" (such as Defendants' communications regarding the availability of United Medigap insurance as a member benefit, where there is no conversation relating to the terms of a contract) as a clerical act that does not require a license. Nat'l Ass'n of Ins. Comm'rs, 2018 *State Licensing Handbook*, at 255, https://www.naic.org/documents/prod_serv_marketreg_stl_hb.pdf (last visited July 22, 2021)."

**Disputed.** Preliminarily, this statement "liberally mixes facts with argument," which "does nothing to assist the court in isolating the material facts, distinguishing disputed from undisputed facts, and identifying the pertinent parts of the record." *Robertson v. Am. Airlines*, 239 F. Supp. 2d 5, 9 (D.D.C. 2002). *See* ¶¶ 40, *supra*. Organizations that urge members to purchase a particular insurance product, from a particular insurance company, and receive compensation that is variable, based on the premium amount, and contingent upon the purchase of a policy, are required to be licensed. *See* Ex. Z, Blanchard Rpt. ¶¶ 39, 57–63, 70–71 (noting AAA and AMA are licensed organizations).

For additional factual evidence rebutting Defendants' statement, *see* SOMF ¶¶ 40–70, *supra*.

63. ███████████████████████████████

██████████████████████████████

███████████████████████████████

████████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

██████████████████████████████

█████████████████████████████

███████████████████████████████

███████████████████████████████

██████████████████████████████

███████████████████████

**Disputed.** *See* ¶ 62, *supra*. Additionally, ████████████████████

████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

███████████████████████████

██████████████████████████████████████

██████████████████████████████████████

█████████████████████████████████████

████████████████████████████████████

██████████████

For additional factual evidence rebutting Defendants' statement, *see* SOMF ¶¶ 40–70, *supra*.

64.     ███████████████████████████████

█████████████████████████████████████████

█████████████████████████████

**Disputed.** *See* ¶¶ 40, 61–63, *supra*.

For additional factual evidence rebutting Defendants' statement, *see* SOMF ¶¶ 40–70, *supra*.

65.     "United waits for formal feedback from state regulators before using a piece of marketing material. *Id.* ¶ 6. Once marketing materials are in use, it is because a regulator has concluded that those materials are not misleading. *Id.*; see also Fla. Admin. Code § 69B156.107; La. Admin. Code tit. 37, § 109; Mich. Admin. Code R 500.655."

**Disputed.** *See* ¶¶ 40, 61–63, *supra*.

For additional factual evidence rebutting Defendants' statement, *see* SOMF ¶¶ 40–70, *supra*.

66. "All of this marketing material discloses the AARP royalty and its purpose, stating, for example: UnitedHealthcare Insurance Company pays royalty fees to AARP for the use of its intellectual property. These fees are used for the general purposes of AARP. AARP and its affiliates are not insurers. Gomez Decl. ¶ 18; Exs. ; *see also, e.g., id.* Exs. K, O, Q, Z."

**Denied.** *See* ¶¶ 8, 9, 40, 61–63, 65, *supra*. The true purpose of the AARP "royalty," which is to compensate AARP for soliciting its members to purchase Medigap policies, is never disclosed to member-policyholders. It is not United that pays the fees, but rather the member-policyholder. SOMF ¶¶ 8, 9, 28, 33. And finally, AARP and its affiliates *are* acting as insurance producers. SOMF ¶¶ 40–70.

67. ██████████████████████████████████████████████████
████████████████████████████████████████████████████████
██████████████████████████████████████████████

**Disputed.** The royalty rate is not proprietary and is readily available to sophisticated entities that would want to access this information for negotiations with AARP. *Krukas v. AARP, Inc.*, 379 F.Supp.3d 1 (D.D.C. 2019); *See e.g.*, *Friedman v. AARP, Inc.*, 2014 WL 12561609 (C.D. Cal. Oct. 6, 2014).

68. "Royalty rates are commonly maintained in confidence, and no state regulator (including FLOIR, LDI, and MIDIFS) has ever required United to disclose on marketing materials the precise royalty rate it pays to AARP, even though every regulator reviews that disclosure language on United's marketing materials. Declaration of Alec W. Farr in Support of

Defendants' Memorandum in Opposition to Class Certification (ECF No. 68) ("Farr Class Cert. Decl.") ¶ 6; Farr Class Cert. Decl. Ex. 5 (ECF No. 68-5) ("Pinsonneault Dep.") 162:17–164:7; Larew Decl. ¶ 20; Gomez Decl. ¶ 18."

**Disputed.** *See* ¶ 67, *supra*. Preliminarily, this statement "liberally mixes facts with argument," which "does nothing to assist the court in isolating the material facts, distinguishing disputed from undisputed facts, and identifying the pertinent parts of the record." *Robertson v. Am. Airlines*, 239 F. Supp. 2d 5, 9 (D.D.C. 2002). Regulators require transparency in selling, soliciting and negotiation of insurance products. As non-licensed entities Defendants have not been subject to regulatory jurisdiction and oversight, and there is no transparency with regulators in the filings, there would be no way for the insurance regulators in D.C. to know that AARP is being compensated ████████████████████████████████████

████████████████████████████████████████████████

████. The materials presented to regulators lack transparency because they do not disclose Defendants' true financial incentive in the sale of the product. Ex. Z, Blanchard Rpt. ¶ 69. If regulators were fully aware of the business relationship between Defendants and United, and the fact that the "royalties" received by AARP as compensation were ███████████████████

████████████████████████████ The regulators would mandate further disclosure and/or require AARP to become a licensed insurer. *Id.* at ¶ 71.

69. ████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████"



**Disputed.** *See* ¶¶ 40, 14–17, 61–63.

For additional factual evidence rebutting Defendants' statement, *see* SOMF ¶¶ 40–70, *supra*.

70.   ███████████████████████████████████████████████████████

███████████████████

**Disputed.** AARP is not "merely" the endorser (*see* ¶¶ 14-17, *supra*).

71.   "United uses AARP's trusted marks across essentially all program materials, including materials used by its licensed agents, and uses the AARP member data to reach AARP members who, by virtue of that membership, have a demonstrated affinity for the AARP brand. Heyman Decl. ¶¶ 13–20."

**Disputed.** AARP and ASI also use AARP's mark to reach AARP members to urge them to purchase AARP Medigap. *See* ¶¶ 14–17.

For additional factual evidence rebutting Defendants' statement, *see* SOMF ¶¶ 40–70, *supra*.

72.   "Both Plaintiffs have admitted the value inherent in AARP's intellectual property. Deposition of Helen Krukas (November 19, 2021) ("Krukas Dep.") 68:9–69:11, 93:6–10; Deposition of Andrea Kushim (December 10, 2020) ("Kushim Dep.") 74:17–76:9."

**Disputed.** Both plaintiffs looked to AARP as a trusted source of information and neither knew that AARP collected 4.95 of their insurance payments. Class Ex. 60, Krukas Dep. at 74:5–12; 119:7–24; Class Ex. 61, Kushim. Dep. at 61:8–19.

For additional factual evidence rebutting Defendants' statement, *see* SOMF ¶¶ 40–70, *supra*.

73.   "Plaintiffs' expert conceded that AARP's intellectual property is valuable and that at least some portion of United's payment to AARP is incontestably a proper royalty payment.

*See* Declaration of Gregory Pinsonneault in Support of Plaintiffs' Motion for Class Certification

(ECF No. 58-1) ("Pinsonneault Decl.") ¶ 100."

**Disputed.** Defendants mischaracterize Mr. Pinsonneault's testimony; in ¶ 100, he

testified that:

> To the extent that the disgorgement remedy for certain of the causes of action at issue is determined to be the profit earned by Defendants related to the royalty payment (as opposed to the entire royalty payment), such a remedy can also be calculated on a classwide basis. To the extent that AARP can identify expenses that are appropriately deducted from the royalty payments to AARP when calculating its profit, such deductions are very likely to be expenses incurred by AARP for the program as a whole, instead of expenses relating to individual Class Members. Similarly, to the extent that AARP provides evidence that a portion of the payment (or profit) it received from the program should be credited to AARP's contributions to the royalty payment, such contributions by AARP are likely to apply to the program as a whole, instead of contributions specific to individual Class Members. Therefore, any reduction to the royalty payment received by AARP related to either deductible expenses or apportionment would serve to reduce the percentage that would be applicable to each of the Class Members in a particular year when calculating disgorgement. However, the same percentage would apply to all Class Members in a particular policy year, so disgorgement can still be calculated on a classwide basis.

74. ██████████████████████████████████████████████████

████████████████████████████████████████████

██████████████

**Disputed.** ASI collaborates with United to design, target, and measure the success of

their marketing program. *See* ¶¶ 14–17, *supra*. ████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████.

75. ████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████████ █

████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████

**Disputed.** *Id.* For additional factual evidence rebutting Defendants' statement, *see* SOMF ¶¶ 40–70, *supra*.

76.████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████

**Disputed and immaterial.** *Id.*█████████████████████████

███████████████████████████████████████████████

██████████████ Ex. B, Pinsonneault Rpt. ¶¶ 108–113.

77.      "AARP is aware of the value of its intellectual property and treats it as a valuable asset. Larew Decl. ¶¶ 9–10, 13."

**Disputed.** *See* ¶¶ 26, 27, 74, *supra*; Ex. B, Pinsonneault Rpt. ¶¶130–187.

78.      "AARP's marks are registered ███████████████████████████

███████████████████████████████████████████████ █

**Disputed.** *Id.*

79.       ████████████████████████████████████

█████████████████████████████

**Disputed.** *See* ¶¶ 14–17, *supra*.

For additional factual evidence rebutting Defendants' statement, *see* SOMF ¶¶ 40–70, *supra*.

80. ██████████████████████████

████████████████████████████████

████████████████████████████████

█████████████████████████████████

█████████████████████████████████

███████████████████████████████

████████████████

**Disputed and immaterial**. *See* ¶¶ 26, 27, 74, *supra*; Ex. B, Pinsonneault Rpt. ¶¶130–187.

81. █████████████████████████████

████████████████████████████████

███

**Disputed**. *See* ¶¶ 14-17, *supra*.

For additional factual evidence rebutting Defendants' statement, *see* SOMF ¶¶ 40–70, *supra*.

82. **Admitted.**

83. "There, she enrolled online and also spoke with someone over the phone whom she admitted may have been from United and not from AARP. Krukas Dep. 74:5–12, 83:11–85:6."

**Disputed**. Defendants mischaracterize Ms. Krukas's testimony. She testified that she believed that she was speaking with someone from AARP, but could not rule out that it may have been someone from United.

84.     "United filed all of the online material Krukas viewed and used to enroll online with LDI. Gomez Decl. ¶ 20."

**Disputed.** *See* ¶¶ 40, 61–63, *supra*.

85.     "Plaintiff Krukas looked over the enrollment materials, including the royalty disclosure, and did not think anything of it. Krukas Dep. 87:11–88:8."

**Disputed.** Ms. Krukas reviewed the disclosures in connection with purchasing AARP's polices that omitted information about AARP's financial stake in the transaction. She testified that such information would have been important to her purchasing decisions. *See* Ex. 60, Krukas Trans. at 53:24–54:17 and 67:12–68:12 (noting that she probably skimmed the disclosure because that is her practice, but assumed that it didn't apply to her, and noting that the disclosure was misleading because, "[I]f people knew that they were getting a commission they might have looked elsewhere, which I would have done.").

86.     **Admitted.**

87.     **Admitted.**

88.     **Admitted.**

89.     **Admitted.**

90.     **Admitted.**

91.     "She did not compare United's premium rates to other providers when she originally enrolled in Louisiana or when she renewed her coverage in Florida; she did not comparison shop until 2016, when she changed insurance plans and providers. Krukas Dep. 56:13–25, 76:13–77:18; 130:3–21; 131:1–10."

**Disputed.** Ms. Krukas testified that she "always thought of AARP as a club that negotiates on the behalf of […] retired people, of its members. And […] it didn't even occur to

64

[her] to look anyplace else. And had [she] known that they were receiving money for it, [she] would have then gone and shopped around with other brokers." Class Ex. 60, Trans. at 47:24–48:13. In addition, in response to the question "But you don't know whether there was a better avenue or not; do you?," Ms. Krukas responded, "that's precisely the point." *Id.* 130:17–21

Defendants wanted AARP to be viewed as a trustworthy source that could provide a shortcut for its members when deciding which Medigap insurance to purchase. *See generally*, Exhibit H, AARP_KRUKAS_0029951. Ms. Krukas viewed AARP as such.

92.    **Admitted.**

93.    "Kushim's application form and other enrollment materials were filed with MIDIFS. Gomez Decl. ¶ 20."

**Disputed.** *See ¶¶* 40, 61–63, *supra*.

94.    "Kushim did not comparison shop, and despite her present allegations in this case, she still has not looked at other insurance providers for Medigap to potentially switch from her current coverage; she remains enrolled in United Medigap coverage today. Kushim Dep. 54:17–55:12."

**Disputed.** Ms. Kushim looked to AARP as a trusted source of information and did not know that AARP collected 4.95 of their insurance payments. Kushim Dep. 61:4–17. Ms. Kushim remains enrolled in AARP Medigap. She understand that if she were to drop her enrollment in AARP Medigap, she would no longer have standing to pursue injunctive relief against AARP, on behalf of herself and the putative class that she seeks to represent, to get Defendants to make adequate and truthful disclosures. Kushim Dec. ¶ 8.

95.     "Kushim testified that she does not know what she would have done had the precise royalty rate from the SHIP Agreement been disclosed on her enrollment or solicitation materials. *Id.* 54:17–55:12, 70:20–25."

**Disputed.** Preliminarily, this statement "liberally mixes facts with argument," which "does nothing to assist the court in isolating the material facts, distinguishing disputed from undisputed facts, and identifying the pertinent parts of the record." *Robertson v. Am. Airlines*, 239 F. Supp. 2d 5, 9 (D.D.C. 2002). *See* ¶ 94. Additionally, the testimony is irrelevant because prior to 2019, Ms. Kushim did not know that AARP kept 4.95% of her AARP Medigap payments. Further, the examiner's question in the cited testimony is predicated on the same misleading statement that Plaintiffs are challenging (i.e. that United pays the royalty).

96.     **Admitted.**

97.     "Neither Krukas nor Kushim relied on any pre-enrollment representations—or found any particular representation to be material—when making their initial, respective decisions to enroll in United's Medigap insurance. *See* Krukas Dep. 81–88:8; Kushim Dep. 68:16–69:5."

**Disputed.** *See* ¶¶ 85, 91, 94, 95, *supra*. Both Plaintiffs reviewed the disclosures in connection with purchasing AARP's polices that omitted information about AARP's financial stake in the transaction, and both testified that such information would have been important to their purchasing decisions. *See* Ex. 60, Krukas Tr. at 53:24–54:17 and 67:12–68:12 (noting that she probably skimmed the disclosure because that is her practice but assumed that it didn't apply to her, and noting that  the disclosure was misleading because, "[I]f people knew that they were getting a commission they might have looked elsewhere, which I would have done."); Ex. 61, Kushim Tr. 57:16–58:5, 62:15–23. (recalling seeing the disclosure and testifying that it was

misleading because, "You forgot the next sentence that says by the way, we take five percent," and that, if there was such a disclosure, it would have given her "something I want to compare to somebody else").

Moreover, both plaintiffs filled out an application that entirely omitted any disclosure, about any compensation going to AARP, in any form (but requiring proof that they were AARP member). *See* Gomez Dec. ¶ 14; *See also* CC and EE.

98.     "Neither Krukas nor Kushim can explain how the alleged deception actually prevented her from comparison shopping or finding out about the pricing and coverage from alternative Medigap providers. Krukas Dep. 131:1–10; Kushim Dep. 54:17–55:12, 70:20–25."

**Disputed.** Preliminarily, this statement "liberally mixes facts with argument," which "does nothing to assist the court in isolating the material facts, distinguishing disputed from undisputed facts, and identifying the pertinent parts of the record." *Robertson v. Am. Airlines*, 239 F. Supp. 2d 5, 9 (D.D.C. 2002). Defendants mischaracterize Plaintiffs' testimony. Ms. Krukas explained that the way Defendants promoted itself and the product "made it impossible for [her] to think that there would be a better […] avenue." Krukas Tr. 130:17-21. In response to the question "But you don't know whether there was a better avenue or not; do you?," Ms. Krukas responded, "that's precisely the point." *Id*. at 130:22–25. Defendants never asked Ms. Kushim this question, but she similarly testified that she believed AARP was a disinterested advocate for seniors, and so she trusted them to guide her in the right direction when choosing a Medigap policy. Kushim 49:18–23; 52:25:53–12; 61:4–15; 73:1–3.

99.     "Neither Krukas nor Kushim disputes that she received exactly the insurance she sought for exactly the price she agreed to pay. Krukas Dep. 58:14–20; Kushim Dep. 64:16–

65:13; see also Moyer Decl. ¶¶ 27–28. Plaintiff Kushim called her Medigap plan the 'Cadillac of policies.' Kushim Dep. 72:24."

**Disputed.** Preliminarily, this statement "liberally mixes facts with argument," which "does nothing to assist the court in isolating the material facts, distinguishing disputed from undisputed facts, and identifying the pertinent parts of the record." *Robertson v. Am. Airlines*, 239 F. Supp. 2d 5, 9 (D.D.C. 2002). Both plaintiffs testified that they did not know that they were paying 4.95% to AARP. Krukas 48:2–13; 67:12–68:1; 112:10–13:1; 119:7–24 ; Kushim Tr. 38:11–39:2; 42:2–6; 83:18–24; 85:25–86:15.

Moreover, Defendants mischaracterize Ms. Kushim's testimony. She was testifying about the fact that she would receive a zero-deductible plan (as opposed to one with high deductibles); she was not testifying about her AARP Medigap plan in particular.

100.    "Both Krukas and Kushim admit that the royalty payment they challenge is not a discrete source of funds. Krukas Dep. 110:1–111:14; Kushim Dep. 85:19–86:5, 87:4–7."

**Disputed.** This statement "liberally mixes facts with argument," which "does nothing to assist the court in isolating the material facts, distinguishing disputed from undisputed facts, and identifying the pertinent parts of the record." *Robertson v. Am. Airlines*, 239 F. Supp. 2d 5, 9 (D.D.C. 2002). *See* ¶¶ 98–99, *supra*.

101.    **Denied**. *See* ¶¶ 98–99, *supra*

102.    "United submitted, and state regulators approved, each of the premium rates that Plaintiffs were charged. Moyer Decl. ¶¶ 27–28."

**Disputed and immaterial**. *See* ¶¶ 36, 41, 44, *supra*. This case does not challenge the setting or reasonableness of the Medigap insurance rates; and no claims have been brought against United (the regulated entity responsible for filing those rates), who would not be liable

for any damages Plaintiffs seek. Nor do Plaintiffs challenge the terms and conditions of service between United and its policyholders. Because Defendants are not licensed insurers, they are not subject to the relevant regulatory regime.

103.    "Plaintiffs have, at all times, paid only and exactly the premium rates mandated by their state departments of insurance. *Id.*"

**Disputed and irrelevant.** This statement "liberally mixes facts with argument," which "does nothing to assist the court in isolating the material facts, distinguishing disputed from undisputed facts, and identifying the pertinent parts of the record." *Robertson v. Am. Airlines*, 239 F. Supp. 2d 5, 9 (D.D.C. 2002). Additionally, *See* ¶¶ 36, 41, 44, 98, 99, *supra* ¶ 44, 102.

104.    "They paid no charge on top of that legally mandated rate as a royalty or "commission." Krukas Dep. 110:1–111:14; Kushim Dep. 85:19–86:5."

Disputed. This statement "liberally mixes facts with argument," which "does nothing to assist the court in isolating the material facts, distinguishing disputed from undisputed facts, and identifying the pertinent parts of the record." Robertson v. Am. Airlines, 239 F. Supp. 2d 5, 9 (D.D.C. 2002). ¶¶ 36, 41, 44, 98, 99, 103. .

105.    "United pays the royalty out of aggregate premium revenue and not as an additional charge "on top" of each insured's premium payment, as Plaintiffs have sometimes alleged. Compare Blanchard Dep. 108:8–109:2, with First Amended Complaint (ECF No. 40, 41) ¶¶ 12, 22, 63."

**Disputed.** *See* ¶¶ 8–9, 18, supra. For additional factual evidence rebutting Defendants' statement. *See* SOMF ¶¶ 8, 9, 29, 33, *supra*.

106.    "Throughout the relevant time period, United's rates for its AARP-branded

Medigap coverage were among the lowest—and often the lowest—in Plaintiffs' home states. *See*

Moyer Decl. Exs. A–M; Michener Decl. ¶¶ 13–22."

**Disputed.** *See* ¶¶ 10, 40, 43, *supra*. Additionally, Defendants made uniformly false

disclosures about their compensation throughout the United States. *See* Gomez.¶ 14.

107.    "These low rates are the result of the large pool of insureds made possible by

United's ability to market to AARP members, ███████████████████████████

███████████████, all of which help ensure the affordability of United's AARP-branded

Medigap insurance. *See* ███████████████████████

**Disputed.** *See* ¶ 1, 8–11, 40, 43, 106, *supra*.

108.    "All of the 'solicitation' materials Plaintiffs have cited were developed, filed for

regulatory approval, and used by United. Gomez Decl. ¶ 20; Farr Class Cert. Decl. Ex. 6 (ECF

No. 68-6) (Pl. Krukas's Interrog. Resp.) No. 4, 5; Farr Class Cert. Decl. Ex. 7 (ECF No. 68-7)

(Pl. Kushim's Interrog. Resp.) No. 4, 5."

**Disputed.** *See* ¶¶14-17, 40, 61-63.

For additional factual evidence rebutting Defendants' statement, *see* SOMF ¶¶ 40–70,

*supra*.

Dated:  August 27, 2021          On Behalf of Plaintiffs:

                                 */s/ Jason S. Rathod*
                                 Jason S. Rathod
                                 (D.C. Bar No. 100082)
                                 Nicholas A. Migliaccio

(D.C. Bar No. 484366)
**MIGLIACCIO & RATHOD LLP**
412 H St. NE, Suite 302
Washington D.C. 20002
Telephone: (202) 470-3520
Facsimile: (202) 800-2730
jrathod@classlawdc.com
nmigliaccio@classlawdc.com

Daniel E. Gustafson
Daniel C. Hedlund (Admitted *Pro Hac Vice*)
David A. Goodwin (Admitted *Pro Hac Vice*)
Brittany N. Resch
**GUSTAFSON GLUEK PLLC**
120 So. 6th St., Ste. 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
Facsimile: (612) 339-6622
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
dgoodwin@gustafsongluek.com
bresch@gustafsongluek.com

Kevin Landau (Admitted *Pro Hac Vice*)
Brett Cebulash (Admitted *Pro Hac Vice*)
**TAUS, CEBULASH & LANDAU, LLP**
80 Maiden Lane, Suite 1204
New York, New York 10038
Telephone: (646) 873-7654
Facsimile: (212) 931-0703
klandau@tcllaw.com
bcebulash@tcllaw.com

Scott D. Hirsch (Admitted *Pro Hac Vice*)
**SCOTT HIRSCH LAW GROUP, PLLC**
6810 N. State Road 7
Coconut Creek, FL 33073
Telephone: (561) 278-6707
scott@scotthirschlawgroup.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, I caused a true and correct copy of the foregoing

document to be served on Defendants' counsel through email.

Dated: August 27, 2021                                    */s/ Jason S. Rathod*
                                                         Jason S. Rathod